SALLY T. MIANO ET AL. *v.* DORIS G. THORNE
(14118)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued January 10—decision released March 26, 1991

*Christopher C. Noble,* for the appellants (plaintiffs).

*Lloyd L. Langhammer,* for the appellee (defendant).

GLASS, J. The dispositive issue in this appeal is whether the 1955 enactment of General Statutes (Sup. 1955) § 3006d,[1] the first legislation in Connecticut authorizing courts to decree a "legal separation" of married persons, retroactively applies to previously entered equitable decrees of separate maintenance and support, thereby transforming such decrees into decrees of legal separation. Because § 3006d provided a remedy that altered substantive marital rights and obligations, we conclude that the legislature intended it to be prospective in application. Accordingly, we affirm the judgment of the trial court that the equitable decree of separate maintenance and support entered in 1953 in favor of the defendant, Doris G. Thorne, in

---

[1] "[General Statutes (Sup. 1955)] Sec. 3006d. LEGAL SEPARATION. In any case in which a divorce might be decreed the superior court, on petition of the party who would be entitled to a divorce, may decree a legal separation of the parties, which separation shall have in all respects the effect of a divorce, except that the parties shall not thereby be made free to marry any third person and except as hereinafter provided. Upon such petition the procedure shall be the same as in actions for divorce, and the court shall have the same power in all matters relating to temporary and permanent orders for alimony, custody and support of children, and to allowances, as in cases of divorce. The parties to such action may at any time resume marital relations, upon filing with the clerk of the superior court for the county in which the separation was decreed their written declaration of such resumption, signed, acknowledged and witnessed. Such declaration shall be entered upon the docket, under the entries relating to such petition."

A related statute contemporaneously enacted was General Statutes (Sup. 1955) § 3007d, which provided: "DIVORCE SUBSEQUENT TO LEGAL SEPARATION. At any time after the entry of a decree of legal separation, either party may petition the superior court in the county where such decree was entered for a decree finally dissolving and terminating the marriage, and if the court finds that the parties have not resumed marital relations since the entry of the decree of legal separation, it may enter a decree finally dissolving and terminating the marriage and may affirm or modify any existing orders and may enter any additional orders relating to alimony, custody and support of children and allowances as are usual in divorce cases."

her action against the now deceased Lawrence S. Thorne (decedent), was not transformed into a decree of legal separation by virtue of the subsequent enactment of § 3006d.[2]

The material facts are not in dispute. The defendant and the decedent were married in Connecticut on January 2, 1939. Some years later, the couple experienced marital difficulties. On or about September 15, 1952, the defendant left the decedent to live elsewhere, taking with her the two minor children of the marriage, the plaintiffs, Sally T. Miano and Dana T. Tartoff. Shortly thereafter, on September 24, 1952, the defendant commenced an equitable action against the decedent in the Superior Court alleging that he had been habitually cruel to her and had neglected to support her and the plaintiffs. She sought relief in the form of: "(1) A decree requiring [the decedent] to support her and [the plaintiffs], and providing at least Twelve Hundred Dollars ($1,200.00) per month for that purpose; and a temporary allowance for the same amount; (2) A lump sum judgment in the amount of Fifty Thousand Dollars ($50,000.00); [and] (3) Such other relief as to equity may appertain."

From the transcript of the subsequent trial, it is evident that the defendant and the decedent had reached an agreement regarding the financial orders to be issued by the court. The court rendered judgment in

---

[2] In its memorandum of decision, the court concluded that the defendant was married to the decedent on May 7, 1953, the date of the entry of the decree of separate maintenance and support, but did not specifically address the issue of the retroactivity of General Statutes (Sup. 1955) § 3006d. The parties briefed and argued the issue before the court, however, and have treated the court's decision, for purposes of appeal, as also indicating that no subsequent statutory enactment retroactively altered the original decree. Therefore, we also treat the court's decision as including an implicit determination that § 3006d is not subject to retroactive application, and we affirm its decision on this ground.

accordance with the agreement on May 7, 1953, ordering, among other things, that the decedent make monthly payments to the defendant for the support of her and the plaintiffs. Because of the parties' agreement, the issue of the decedent's alleged cruelty was never factually resolved, even though the court's memorandum of decision found all of the issues in favor of this defendant.[3]

After the entry of the decree of separate maintenance and support, the defendant and the decedent continued to live separately up to and including the date of October 6, 1988, when the decedent died as a resident of West Palm Beach, Florida. It was later discovered that he had left a will naming the plaintiffs as the primary beneficiaries and residuary legatees of his estate. On January 25, 1989, after the will had been submitted to probate in a Florida court, the defendant filed an application in that court seeking to exercise the election afforded to a "surviving spouse" under Florida law to claim a 30 percent share of the gross estate of a deceased spouse.[4] See Fla. Stat. Ann. §§ 732.201, 732.207 (West 1976). The plaintiffs promptly challenged the defendant's status as the surviving "spouse" of the decedent by filing this action in the Connecticut Superior Court for a declaratory judgment pursuant to General Statutes § 52-29.[5] The defendant counterclaimed,

---

[3] Counsel for the decedent stated at the hearing: "I want it understood in the record now that the statements made by the [wife] relating to the conduct of the [husband are] categorically denied by the [husband] and will be denied if those allegations are made again in the future. The reason for my statement is as we've arrived at an agreement, I don't want the fact that we did not proceed or deny it and arrived at a settlement before he had an opportunity to go on the stand, that it stands undenied."

[4] The plaintiffs filed an objection to the defendant's application, which is currently pending in the Florida Probate Court.

[5] "[General Statutes] Sec. 52-29. SUPERIOR COURT MAY DECLARE RIGHTS AND LEGAL RELATIONS. (a) The superior court in any action or proceeding may declare rights and other legal relations on request for such a declara-

alleging that she was in fact the spouse of the dece-
dent from the date of her marriage until the date of
his death.

Thereafter, the parties filed cross motions for sum-
mary judgment on the issue of whether the defendant
remained married to the decedent until the date of his
death. The plaintiffs argued that § 3006d applied ret-
roactively to the decree of separate maintenance and
support obtained by the defendant, and thus trans-
formed the decree into one of legal separation. In addi-
tion, the plaintiffs maintained that the subsequent
passage and retroactive application of Public Acts 1973,
No. 73-373, § 7 (b) (1973 act),[6] further transformed the
decree into one of legal separation "hav[ing] the effect
of a decree dissolving the marriage," thereby giving
the defendant and the decedent "the status of unmar-
ried persons." The court rejected the plaintiffs' argu-
ments and rendered summary judgment in favor of the
defendant.[7] The plaintiffs appealed to the Appellate
Court, and we transferred the appeal to this court in
accordance with Practice Book § 4023.

The plaintiffs have presented two issues for our
review: (1) whether the enactment in 1955 and retro-
active application of § 3006d transformed the decree
of separate maintenance and support entered in 1953
into a decree of legal separation; and (2) if the decree
was so transformed, whether the passage and retro-

tion, whether or not further relief is or could be claimed. The declaration
shall have the force of a final judgment.

"(b) The judges of the superior court may make such orders and rules
as they may deem necessary or advisable to carry into effect the provisions
of this section."

[6] Public Acts 1973, No. 73-373, § 7 (b) provides in pertinent part: "A
decree of annulment or dissolution shall give the parties the status of unmar-
ried persons and they may marry again. A decree of legal separation shall
have the effect of a decree dissolving the marriage except that neither party
shall be free to marry a third person. . . ."

[7] See footnote 2, supra.

active application of the 1973 act further transformed the decree into one giving the defendant the status of an "unmarried person." Because we hold that § 3006d does not apply retroactively, we need not consider the plaintiffs' second claim.

The starting point for our analysis of the plaintiffs' claim that § 3006d applied retroactively is General Statutes § 55-3. Section 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." "The 'obligations' referred to in the statute are those of substantive law." *Nagle* v. *Wood,* 178 Conn. 180, 186, 423 A.2d 875 (1979); see *Gormley* v. *State Employees Retirement Commission,* 216 Conn. 523, 529, 582 A.2d 764 (1990). Accordingly, "we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only." *Darak* v. *Darak,* 210 Conn. 462, 467, 556 A.2d 145 (1989). This presumption is rebutted only when the legislature " 'clearly and unequivocally' expresses its intent that the legislation shall apply retrospectively. *State* v. *Lizotte,* 200 Conn. 734, 741, 517 A.2d 610 (1986); *Schieffelin & Co.* v. *Department of Liquor Control,* [194 Conn. 165, 174, 479 A.2d 1191 (1984)]; *Enfield Federal Savings & Loan Assn.* v. *Bissell,* [184 Conn. 569, 572, 440 A.2d 220 (1981)]." *Darak* v. *Darak,* supra, 468. Moreover, although we have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary; *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council,* 217 Conn. 143, 151, 584 A.2d 1183 (1991); "a statute which, in form, provides but a change in remedy but actually brings about changes in substantive rights is not subject to retroactive application." *Hunter* v. *Hunter,* 177 Conn. 327,

332, 416 A.2d 1201 (1979). "The rule is one of obvious justice and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed." *Union Pacific R.R. Co.* v. *Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S. Ct. 101, 58 L. Ed. 179 (1913).

While § 3006d was intended to provide a new remedy for spouses desiring to live apart,[8] the marital rights and obligations of spouses subject to a decree of legal separation were markedly different from those bound by an equitable decree of separate maintenance and support. The fundamental difference concerned the corollary marital rights and obligations of cohabitation and support. To obtain a decree of separate maintenance and support, an aggrieved spouse, typically a wife, was required to demonstrate in an equitable proceeding that she was "justified" in living apart from her husband. *DeRosa* v. *DeRosa,* 129 Conn. 409, 412, 28 A.2d 846 (1942). A wife alleging her husband's cruelty as a ground for the entry of the decree, for example, could prevail with a showing of "something less than conduct which would constitute intolerable cruelty as a ground for divorce. It [was] sufficient if the husband [had] made it intolerable in any way for his wife to live with him." *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 683, 116 A.2d 906 (1955); see *Cantiello* v. *Cantiello,* 136 Conn. 685, 689, 74 A.2d 199 (1950); *Campbell* v. *Campbell,* 110 Conn. 277, 279, 147 A. 800 (1929).

The nature of the relief afforded by the decree of separate maintenance and support, however, was limited. Rather than authorizing a wife's continued separation

---

[8] The statement accompanying the bill that the legislature ultimately enacted as General Statutes (Sup. 1955) § 3006d explained that the proposed legislation "would . . . open up an avenue for those who do not want to bring a divorce action." H. Bill No. 72 (1955 Sess).

from her husband, the decree provided only temporary relief from her obligation to cohabit with him as an incident to her right to receive his support. See *Martin v. Martin,* 134 Conn. 354, 356, 57 A.2d 622 (1948); see also 24 Am. Jur. 2d, Divorce and Separation § 4. A husband could at any time make a good faith offer of reconciliation,[9] which would place his wife under an obligation to resume cohabitation if the original justification for her refusal to do so had passed. See *Kurzatkowski v. Kurzatkowski,* supra, 684; accord *Martin v. Martin,* supra, 358. If she unjustifiably rejected the offer of reconciliation, her right to support could be forfeited; see *Kurzatkowski v. Kurzatkowski,* supra, 683; *DeRosa v. DeRosa,* supra, 411; and she could be charged with willful desertion, a ground for divorce. See General Statutes (1949 Rev.) § 7327; *Campbell v. Campbell,* supra; see also 24 Am. Jur. 2d, supra, § 111.

By comparison, the decree of legal separation available under § 3006d, while leaving the bulk of the statutory and common law rights and obligations of married persons intact,[10] terminated the right and correspond-

---

[9] Where a wife's refusal to live with her husband was the result of "a continued series of acts of cruelty," this court held that "in order that the wife be under an obligation to resume cohabitation it is essential that something more appear than that the husband's offers of reconciliation were made in good faith. It must also appear from the character of the man that there is a reasonable probability that he will not again indulge in acts of cruelty. *DeRosa v. DeRosa,* 129 Conn. 409, 411, 28 A.2d 846 (1942)." *Kurzatkowski v. Kurzatkowski,* 142 Conn. 680, 684, 116 A.2d 906 (1955).

[10] Despite the broad language of General Statutes (Sup. 1955) § 3006d stating that a decree of legal separation "shall have in all respects the effect of a divorce, except that the parties shall not thereby be made free to marry any third person," the statute was construed to have the following limited effect: "Each separated husband and wife retain[ed] all the statutory rights of property, inheritance and administration in the estate of the other together with all the obligations of the continuing marriage contract *except for those concerned with cohabitation.*" (Emphasis added.) *Viglione v. Viglione,* 22 Conn. Sup. 65, 69, 160 A.2d 501 (1960); see 24 Am. Jur. 2d, Divorce and Separation § 1.

ing obligation of cohabitation, thereby authorizing the continued separation of the parties to the decree.[11] See *Viglione* v. *Viglione,* 22 Conn. Sup. 65, 69, 160 A.2d 501 (1960); see also *Pettis* v. *Pettis,* 91 Conn. 608, 617–18, 101 A. 13 (1917) (discussing similar decree of divorce a menso et thoro); see generally 24 Am. Jur. 2d, supra, §§ 4, 111; 1 H. Clark, Law of Domestic Relations (1987) § 7.4. Although cohabitation could be resumed at any time after the entry of the decree upon the mere filing of a written "declaration of resumption"; General Statutes (Sup. 1955) § 3006d; a wife could reject her husband's offer of reconciliation without jeopardizing her right to support or incurring a charge of willful desertion. See generally 24 Am. Jur. 2d, supra, § 111; 1 H. Clark, supra. A husband, on the other hand, could not invoke his right to his wife's cohabitation as an incident to his obligation to support her by simply improving his behavior and making the appropriate offer of reconciliation. 24 Am. Jur. 2d, supra, § 111; 1 H. Clark, supra.

The evident basis for the distinction between the rights and obligations of married persons bound by the respective decrees was that a wife seeking a decree of legal separation, unlike a wife bringing an equitable action for separate maintenance and support, was required to demonstrate, "in accordance with the procedures governing divorces," that she "would be entitled to a divorce." General Statutes (Sup. 1955) § 3006d. In other words, "[t]he existence of statutory grounds for a divorce must be established in such proceedings, such grounds as would justify the court in finally terminating the marriage relationship." *Viglione* v. *Viglione,* supra, 70. A wife alleging that her husband

---

[11] The statement attached to the bill that eventually was enacted as General Statutes (Sup. 1955) § 3006d described the effect of a decree of legal separation as follows: "The separation decree sanctions the refusal of the wife to cohabit." H. Bill No. 72 (1955 Sess.).

had treated her cruelly was therefore required to establish that his behavior rose to the level of "intolerable cruelty," a statutory ground for divorce; see General Statutes (1949 Rev.) § 7327; which entailed proof that "the cumulative effect of the [husband's] cruelty upon the suffering [wife] has become such that the public and personal objects of matrimony have been destroyed beyond rehabilitation . . . ." *McEvoy* v. *McEvoy*, 99 Conn. 427, 432, 122 A. 100 (1923); see also *Campbell* v. *Campbell,* supra.

In view of the substantive disparity between the marital rights and obligations of spouses subject to the respective decrees, we presume that the legislature did not intend § 3006d retroactively to transform previously entered equitable decrees of separate maintenance and support, obtained upon a lesser degree of proof than that required for a divorce, into decrees of legal separation.[12] The plaintiffs have not directed our

---

[12] This conclusion is reinforced by a reading of the statute in conjunction with its concurrently enacted companion provision, General Statutes (Sup. 1955) § 3007d. See footnote 1, supra. Section 3007d permitted "either party" to a legal separation decree to petition for and obtain a decree "finally dissolving and terminating the marriage" upon a showing that cohabitation had not resumed since the entry of the legal separation decree. The dissolution decree available under § 3007d, although bearing a different label, was the functional equivalent of a decree of divorce, which could not, under the law existing in 1955, be obtained upon a mere showing of the absence of cohabitation over a period of time. See General Statutes (1949 Rev.) § 7327. Rather, it was necessary to establish "fault" on the part of the spouse against whom the divorce action was brought, i.e., the existence of a statutory ground for divorce. See General Statutes (1949 Rev.) § 7327; see also *Viglione* v. *Viglione,* 22 Conn. Sup. 65, 69–70, 160 A.2d 501 (1960). The availability of a "conversion divorce" under § 3007d, however, was not considered a material change in the public policy of this state because it could be obtained only by parties to a legal separation decree that had been entered in accordance with General Statutes (Sup. 1955) § 3006d, which required, as a prerequisite to the entry of the decree, that the existence of a statutory ground for divorce be established. See General Statutes (Sup. 1955) § 3006d; see generally *Viglione* v. *Viglione,* supra.

Because an equitable decree of separate maintenance and support could be obtained without establishing grounds for divorce; see, e.g., *Kurzatkowski*

attention to any "clear and unequivocal" language in § 3006d, nor do we find any upon an independent examination of the statute, that rebuts this presumption.[13] Accordingly, we conclude that § 3006d did not apply retroactively, and hence did not transform the equitable decree of separate maintenance and support obtained by the defendant into a decree of legal separation.

Since the decree was not so transformed, the subsequent passage of the 1973 act, limited in application by its terms to "actions for divorce, annulment, and legal separation," could not have further transformed the decree into one giving the defendant the status of an "unmarried person" even if retroactively applied.

The judgment is affirmed.

In this opinion the other justices concurred.

---

v. *Kurzatkowski,* 142 Conn. 680, 683, 116 A.2d 906 (1955); the transformation of such decrees into decrees of legal separation by the retroactive application of § 3006d would have permitted either spouse bound by the equitable decree to obtain, under § 3007d, a decree finally dissolving and terminating the marriage without the requisite showing of "fault." Such a result would have been inconsistent with "the long established policy of this State which regards marriage as a life *status* and indissoluble save for such causes as in effect repudiate and annul the marriage covenant. These causes are specified by our statute law . . . ." (Emphasis in original.) *Swist* v. *Swist,* 107 Conn. 484, 489–90, 140 A. 820 (1928). Moreover, since the decedent's alleged habitual cruelty was never conclusively established in the defendant's action for separate maintenance and support, it would be particularly inappropriate to apply § 3006d retroactively in this case. Legislation will not be applied retroactively if "good sense and justice dictate otherwise." *East Village Associates, Inc.* v. *Monroe,* 173 Conn. 328, 332, 377 A.2d 1092 (1977).

[13] In this respect, we note that the statement accompanying the bill that ultimately became General Statutes (Sup. 1955) § 3006d stated that the legislation proposed by the bill "would not take away anyone's right to pursue present remedies." H. Bill No. 72 (1955 Sess.).