## IN RE DANIEL H.*
(15314)

## IN RE JONATHAN M.
(15317)

## IN RE MICHAEL C.
(15318)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued March 22—officially released June 18, 1996

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

*Robert P. Pickering,* with whom, on the brief, was *F. Mac Buckley,* for the appellant in Docket No. 15314 (respondent Daniel H.).

*Mark Shapera,* deputy assistant public defender, for the appellant in Docket No. 15317 (respondent Jonathan M.).

*Grace Cavero*, deputy assistant public defender, with whom, on the brief, was *Christine Perra Rapillo*, supervising assistant public defender, for the appellant in Docket No. 15318 (respondent Michael C.).

*Francis J. Carino*, chief juvenile prosecutor, for the appellee in each case (petitioner).

NORCOTT, J. The sole issue in this consolidated appeal is whether General Statutes § 46b-127,[1] the man-

---

[1] General Statutes § 46b-127 provides: "Mandatory transfer of child charged with certain felonies to regular criminal docket. (a) The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; (2) any child referred for (A) the violation of section 53a-55a, 53a-56a, 53a-60a, 53a-60c, 53a-72b, 53a-92a, 53a-94a, 53a-102a, 53a-103a or subdivision (2) of subsection (a) of section 53a-135, (B) the violation of section 53a-59, 53a-70a, 53a-101 or 53a-134 committed with a firearm or (C) the commission in the course of a single transaction of any felony that is a serious juvenile offense, as defined in section 46b-120, other than murder under sections 53a-54a to 53a-54d, inclusive, and of a violation of subsection (a) of section 29-35, provided such offense was committed after such child attained the age of fourteen years and provided further the prosecuting authority for juvenile matters, after consultation with the state's attorney, has moved for such transfer; (3) any child referred for the violation of any provision of title 53a which is designated as a class A felony, other than murder or any such provision specified in subdivision (2) of this subsection, if such violation was committed after such child attained the age of fourteen years, provided such child has previously been adjudicated a delinquent at any age for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or (4) any child referred for the violation of any provision of title 53a which is designated as a class B felony, other than any such provision specified in subdivision (2) of this subsection, provided such violation was committed after such child attained the age of fourteen years, and further provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony. The prosecuting authority for juvenile matters, in deciding whether to seek the transfer of a child under subdivision (2) of this subsection, shall consider whether such child is a person with mental retardation, as defined in section 1-1g, or suffers from a substantial mental disorder, as defined in section 17a-75. Not later than ten days after the filing of a motion to transfer a child to the regular criminal docket under subdivision (2) of this subsection, the child may file a notice of intent to request a hearing under subsection (c) of this section.

datory juvenile transfer statute, which incorporates No. 94-2, § 6, of the 1994 Public Acts, July Special Session (1994 amendment), wherein the legislature eliminated the right to an immediate appeal from a court order transferring a juvenile matter to the regular criminal docket of the Superior Court, applies to juveniles who were charged with offenses that occurred prior to October 1, 1994, the effective date of the amendment. The respondents, Daniel H., Jonathan M., and Michael C.,[2]

"(b) No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. At such hearing, the child shall have the right to counsel and to confront the witnesses against him. The procedures provided in section 54-46a shall apply at such hearing, except that the child shall have the right to move to suppress any admission made by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery of exculpatory information.

"(c) If the court makes a finding of probable cause, any child referred pursuant to subdivision (2) of subsection (a) of this section may request an immediate hearing at which he shall have the right to present evidence that he should not be transferred to the regular criminal docket because (1) he is a person with mental retardation, as defined in section 1-1g, or (2) he suffers from a substantial mental disorder, as defined in section 17a-75 or (3) an alternative plan or placement within the juvenile justice system has been arranged that will protect the community from further criminal conduct by the child. If the court, after such hearing, finds that a factor specified in subdivision (1), (2) or (3) of this subsection has been proven by a preponderance of the evidence, it shall not transfer such child to the regular criminal docket.

"(d) Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age, except that no such child shall be placed in a correctional facility but shall be maintained in a facility for children and youth until he attains the age of sixteen years or until he is sentenced, whichever occurs first. Such child shall receive credit against any sentence imposed for time served in a juvenile facility prior to the effectuation of the transfer. A child who has been transferred may enter a guilty plea to a lesser offense if the court finds that such plea is made knowingly and voluntarily. Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years."

[2] General Statutes § 46b-142 (b) provides in relevant part: "The name of the child or youth involved in any such appeal shall not appear on the record

are juveniles charged with crimes that occurred prior to October 1, 1994. In each case, the respondent appeals from the Appellate Court's order granting the state's motion to dismiss, for lack of jurisdiction, the respondent's appeal of the trial court's transfer order. Because we conclude that the legislature's decision to prohibit a juvenile from taking an interlocutory appeal from a court's transfer order is a significant and substantive change in the law, we construe the 1994 amendment to apply prospectively only. It is, therefore, inapplicable to the respondents and, accordingly, we reverse the orders of the Appellate Court dismissing the cases.

It is undisputed that in each case the following series of events occurred. The state filed a petition of alleged delinquency charging each respondent with, inter alia, the crime of murder in violation of General Statutes § 53a-54a.[3] The murders with which each respondent was charged took place prior to October 1, 1994, when

of the appeal, and the records and papers of any juvenile case filed in the appellate court shall be open for inspection only to persons having a proper interest therein and upon order of the court."

At the time of the alleged crimes, each of the respondents was under sixteen years of age and was, therefore, a "child" as defined by General Statutes § 46b-120.

[3] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

Daniel H. was charged with murder in connection with a shooting that occurred on June 26, 1994. Jonathan M. was charged with murder, felony murder, first degree burglary, third degree larceny and two violations of theft of a firearm in connection with an incident that occurred on August 17, 1994. Michael C. was charged with murder in connection with a shooting that occurred on January 19, 1994.

General Statutes (Rev. to 1993) § 46b-127 provided for an immediate appeal from a transfer order.[4] Based on the nature of the charges and the fact that each of the respondents was at least fourteen years of age at the time that he allegedly committed the murder, the state moved to transfer each of the cases from the juvenile docket to the regular criminal docket in accordance with § 46b-127.[5] Subsequent to the date of the offenses, but prior to the court's transfer order in any of the cases, the legislature amended General Statutes (Rev. to 1993) § 46b-127 by repealing the section that provided for the right to an immediate appeal from a transfer order. See Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6. Subsequent to October 1, 1994, the effective date of the 1994 amendment, a hearing was held in each case, and in each case the trial court concluded that there was probable cause to support the underlying murder charge and, consequently, ordered the matter to be transferred to the regular criminal docket.[6]

Each respondent appealed from the trial court's transfer order to the Appellate Court and the state

[4] General Statutes (Rev. to 1993) § 46b-127 provides in relevant part: "Mandatory transfer of child charged with certain felonies to regular criminal docket. The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. . . . *An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal.* . . ." (Emphasis added.)

[5] At all relevant times, § 46b-127 mandated a court to transfer a juvenile matter to the regular criminal docket if the child allegedly had committed a murder after he or she had reached the age of fourteen, and if the court determined that there was probable cause to believe that the child had committed the murder. See footnotes 1 and 4.

[6] The transfer order in each case was issued on the following dates: Daniel H., May 31, 1995; Jonathan M., April 3, 1995; and Michael C., March 21, 1995.

moved to dismiss the appeals for lack of subject matter jurisdiction. The state argued that, on the date that the transfer order was granted, a transfer order, pursuant to the 1994 amendment, was no longer considered a final judgment for purposes of appeal. Thus, as the order was interlocutory, the court was without jurisdiction to hear the appeal of the transfer order. The Appellate Court agreed and granted the state's motion to dismiss each of the respondents' appeals. Thereafter, we granted the respondents' petitions for certification to appeal from the Appellate Court orders.[7] We reverse the Appellate Court orders granting the state's motions to dismiss.

The respondents claim that the 1994 amendment to § 46b-127 does not apply to them because it effected a substantive change in the law and, therefore, cannot properly be construed to apply retroactively in the absence of a clear legislative intent. In support of this claim, the respondents rely on the common law presumption against retroactive application of substantive changes in the law, as well as General Statutes § 1-1 (t) and (u),[8] and General Statutes § 55-3.[9] The

---

[7] We granted the respondents' petitions for certification to appeal limited to the following questions: (1) "Does General Statutes § 46b-127, as amended by § 6 (d) of No. 94-2 of the 1994 Public Acts, July Special Session, apply to the transfer from the juvenile docket to the adult docket in this case?" and (2) "If the answer to the first question is 'yes,' does that application constitute an ex post facto law in violation of either the federal or state constitutions?" *In re Jonathan M.*, 235 Conn. 914, 665 A.2d 608 (1995); *In re Daniel H.*, 235 Conn. 913, 665 A.2d 606 (1995); *In re Michael C.*, 235 Conn. 912, 912–13, 665 A.2d 608 (1995).

Because we conclude that the 1994 amendment does not apply retroactively, we need not reach the second issue.

[8] General Statutes § 1-1 provides in relevant part: "(t) The repeal of an act shall not affect any punishment, penalty or forfeiture incurred before the repeal takes effect, or any suit, or prosecution, or proceeding pending at the time of the repeal, for an offense committed, or for the recovery of a penalty of forfeiture incurred under the act repealed.

"(u) The passage or repeal of an act shall not affect any action then pending. . . ."

[9] General Statutes § 55-3 provides: "Limitation of effect of certain acts. No provision of the general statutes, not previously contained in the statutes

state relies on two arguments in support of the Appellate Court's orders. First, it argues that applying the 1994 amendment to the respondents does not constitute a retroactive application of the amendment because the law in existence on the date of the transfer order should control. Because the amendment took effect before the transfer order in each case was issued, the amendment is not being retroactively applied. Specifically, the state contends that the right to appeal presumes that an adverse judgment has been rendered from which an appeal may be taken and that, therefore, the law in effect on the date of the adverse judgment is the properly applicable law. Second, the state argues that even if the date of the offense is the proper date upon which we should focus, the 1994 amendment effected a procedural, not a substantive, change in the law and, therefore, that the amendment should be retroactively applied to the respondents. Because we conclude that a juvenile's ability to appeal immediately from a transfer order is substantive, we hold that retroactive application of the 1994 amendment was improper.

We begin our analysis of the respondents' claim with a brief history of a juvenile's right to appeal immediately from a court's order transferring his or her case to the regular criminal docket. Prior to 1986, § 46b-127 did not provide that a transfer order was a final judgment for purposes of appeal. See General Statutes (Rev. to 1985) § 46b-127; *In re Juvenile Appeal (85-AB)*, 195 Conn. 303, 307, 488 A.2d 778 (1985). In 1985, we concluded that we lacked jurisdiction to hear an appeal from a

of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

We have previously interpreted § 55-3 to incorporate the common law presumption against retroactive application of substantive changes in the law. *Miano* v. *Thorne*, 218 Conn. 170, 175–76, 588 A.2d 189 (1991). Because we agree that § 55-3 precludes a retroactive application of the 1994 amendment to the respondents, we need not address their alternate ground for reversal.

transfer order until a final judgment had been rendered because a transfer order was an interlocutory order that did not fall within one of the exceptions to the general prohibition against interlocutory appeals. See *In re Juvenile Appeal (85-AB)*, supra, 307. Following our decision in that case, in 1986, the legislature adopted No. 86-185, § 2, of the 1986 Public Acts, which amended General Statutes (Rev. to 1985) § 46b-127 to provide that "[a]n order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal." Thereafter, in 1994, the legislature amended General Statutes (Rev. to 1993) § 46b-127 and removed the section that provided that a transfer order was a final judgment for purposes of appeal. See Public Acts, Spec. Sess., July, 1994, No. 94-2, § 6.

In order to determine whether the elimination of a juvenile's ability to appeal immediately from a transfer order applies to the respondents, we must interpret § 46b-127 in order to determine whether the changes made by the 1994 amendment were intended to be applied retroactively. Section 55-3 provides that "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." "The obligations referred to in [§ 55-3] are those of substantive law. . . . Accordingly, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . This presumption is rebutted only when the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. . . . Moreover, although we have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to

the contrary . . . a statute which, in form, provides but a change in remedy but actually brings about changes in substantive rights is not subject to retroactive application. . . . The rule is one of obvious justice and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed." (Citations omitted; internal quotation marks omitted.) *Miano* v. *Thorne*, 218 Conn. 170, 175–76, 588 A.2d 189 (1991).

Our construction of § 46b-127 is guided by the maxim that criminal statutes are to be construed strictly against the state and liberally in favor of the defendant. *State* v. *Torres*, 206 Conn. 346, 355, 538 A.2d 185 (1988). Although statutes concerning juvenile matters are generally considered to be civil in nature; see *Kent* v. *United States*, 383 U.S. 541, 554, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966); *In re Bromell G.*, 214 Conn. 454, 461, 572 A.2d 352 (1990); *In re Tyvonne M.*, 211 Conn. 151, 158, 558 A.2d 661 (1989); we have previously applied the canon of strict construction against the state in construing statutes relating to juvenile matters that involve traditionally criminal conduct. See *State* v. *Torres*, supra, 355; *In re Luis R.*, 204 Conn. 630, 635, 528 A.2d 1146 (1987). Such an application is warranted in light of the potential deprivation of liberty involved in juvenile delinquency proceedings. 3 J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 59.01, p. 92.

The first step in ascertaining whether the 1994 amendment was intended to apply retroactively to the respondents, therefore, is to decide whether the removal of a juvenile's ability to appeal immediately from a court's transfer order is a substantive change in the law. We previously have concluded that to provide a right to a direct appeal, where one did not otherwise exist, "constitutes a substantive change in the law." *In re Judicial Inquiry No. 85-01*, 221 Conn. 625, 632, 605 A.2d 545 (1992). The logical corollary to this conclusion

is that the removal of a right to a direct appeal is also a substantive change in the law.

The implications of providing a juvenile with the ability to appeal immediately from a court's order to transfer a juvenile matter to the regular criminal docket are significant. In *In re Bromell G.*, supra, 214 Conn. 460–61, we held that, although not expressly provided for in the Practice Book, a stay of execution to appeal from a juvenile transfer order was warranted because otherwise the important statutory rights of the juvenile would be irreparably lost. " 'The General Assembly . . . has expressed a preference for shielding children from criminal liability except in clearly circumscribed situations. The additional protections afforded juveniles, which include separation of juvenile matters from other business of the Superior Court; General Statutes § 46b-122; confidential proceedings; General Statutes § 46b-122; anonymity; General Statutes § 46b-124; and erasure of police and court records; General Statutes § 46b-146; demonstrate the legislature's intent that children accused of wrongdoing be accorded different treatment from adults.' *State* v. *Torres*, [supra, 206 Conn. 360–61]. This intent was also manifested in the legislature's 1986 amendment to § 46b-127, providing that an order transferring a juvenile to the regular criminal docket 'shall be a final judgment for purposes of appeal.' See also General Statutes § 46b-126." *In re Bromell G.*, supra, 460.

At oral argument, the state acknowledged that if the 1994 amendment were to have removed completely the respondents' ability to appeal from the transfer order, its position in this regard might be untenable. The state contends, however, that although the 1994 amendment removes the ability to appeal *immediately*, the ability to appeal from the order following a final judgment in the case has been preserved and, therefore, that the change effected by the 1994 amendment is not substan-

tive. We are not persuaded by this distinction. In light of the significant interests at stake and the fact that these interests will be irretrievably lost if a juvenile is not allowed to appeal immediately from the transfer order, we conclude that much of the legal and practical value of the appeal would be eliminated if the ability to appeal were postponed.

"[I]t appears that the legislature has implicitly recognized that the harm to a juvenile that may result from his confinement in an adult detention facility as well as the exposure to publicity likely to result from a transfer order are irreversible consequences of the order that cannot adequately be rectified at a later time even if the juvenile should prevail at trial in a regular criminal proceeding or on appeal from the judgment in such a proceeding. This court has declared that an interlocutory order should be appealable where the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . . The purpose of the legislature in protecting juveniles from adverse consequences of an erroneous transfer order that can never be remedied later, by providing in § 46b-127 for an appeal of such an order, would be largely defeated if the order were to be implemented while the appeal was pending. Although the rights of a juvenile that may be lost are statutory and not constitutional, those rights are analogous to those of a criminal defendant seeking to avoid a trial that would violate the constitutional protection against double jeopardy afforded by the fifth and fourteenth amendments to our federal constitution. In either case, the right asserted would be lost, probably irreparably, unless interlocutory review was permitted." (Citation omitted; internal quotation marks omitted.) *In re Bromell G.*, supra, 214 Conn. 460–61. We conclude, therefore, that under the circumstances of this case, the postponement of the respon-

dents' right to appeal, until after a final judgment has been rendered, is a substantive change in the law.

Having determined that the 1994 amendment affects the respondents' substantive rights, we must presume that it shall apply prospectively only. This presumption may be rebutted only by a clear and unequivocal expression of legislative intent to the contrary. *Miano* v. *Thorne*, supra, 218 Conn. 175–76. There is nothing, however, in the language or the legislative history of the 1994 amendment to suggest such an intent. Thus, we conclude that the 1994 amendment applies prospectively only.[10]

The state argues that to apply the 1994 amendment to the respondents does not constitute a retroactive application of the amendment. In this regard, the state acknowledges that the date of the offense is the appropriate date to which we refer in determining whether changes in the law that affect the conduct proscribed or the maximum penalty allowed are, in a particular case, being applied retroactively. The state contends, however, that the more reasonable date to consider in determining whether, in a particular case, a change in the law that affects the respondent's ability to appeal from a transfer order constitutes a retroactive application of the change, is the date on which the order was issued, because the ability to appeal presumes that an adverse judgment has been rendered. The state's argument, grounded in notions of vested rights, is essentially that the right to an appeal does not vest until the judg-

---

[10] Our conclusion that the 1994 amendment applies prospectively only is also supported by the canon of statutory construction that instructs us to read statutes to avoid, rather than to create, constitutional questions. *In re Valerie D.*, 223 Conn. 492, 534, 613 A.2d 748 (1992). In the present case, a retroactive application of the 1994 amendment would raise significant concerns about the amendment's constitutionality insofar as it arguably makes the punishment for a crime more burdensome after its commission and, therefore, might be found to be an ex post facto law under *Collins* v. *Youngblood*, 497 U.S. 37, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990).

ment from which a respondent seeks to appeal has been rendered. The state, however, misapprehends the nature of retroactivity.

In criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature. See, e.g., *State* v. *Ross*, 230 Conn. 183, 283, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995) (relying on date of offense in retroactivity analysis of change in law ultimately found to be procedural); *State* v. *Jones*, 132 Conn. 682, 684–85, 47 A.2d 185 (1946) (application of statute requiring court in certain pending cases to order examination of defendant for venereal disease, enacted after date of offense but prior to arrest, would impermissibly give it retroactive effect); see also *State* v. *Millhouse*, 3 Conn. App. 497, 501, 490 A.2d 517 (1985) (in construing penal statute to determine whether application is retroactive, date of crime controls). In fact, we recently have rejected an argument analogous to the argument made by the state in the present case. See *State* v. *Crowell*, 228 Conn. 393, 636 A.2d 804 (1994). In *Crowell*, the state had contended that to apply a revised statute of limitations, which the legislature had extended from five years to seven years, to a defendant who allegedly had committed a child sexual abuse offense less than five years prior to the revision, would not constitute a retroactive application. Id., 398. Specifically, the state had argued that, although the change had been made after the date of the offense, it had occurred prior to the expiration of the original five year period and, therefore, the defendant's right to a statute of limitations defense had never vested. Id. We rejected this approach and, relying on the date on which the offense was committed, concluded that to apply the seven year statute of limitations to the defendant would constitute a retroactive

application of the law. Id., 401. Similarly, in the present case, to determine whether applying the 1994 amendment to the respondents would constitute retroactive application of the amendment, we look to the law in effect on the date of their alleged offenses. We conclude that to apply the 1994 amendment to the respondents would constitute a retroactive application.[11] Accordingly, we conclude that the 1994 amendment does not apply to juveniles charged with crimes that occurred prior to its effective date.

The orders of the Appellate Court are reversed and the cases are remanded to that court with direction to deny the state's motions to dismiss and for further proceedings.

In this opinion the other justices concurred.

---

[11] Moreover, the state's theory of retroactivity in this context would be contrary to our presumption that in enacting laws, the legislature does not intend to accomplish bizarre results. *State* v. *Burns*, 236 Conn. 18, 26, 670 A.2d 851 (1996); *State* v. *Dolphin*, 203 Conn. 506, 524, 525 A.2d 509 (1987). The state's proffered interpretation could lead to the anomalous situation in which two individuals, having committed similar offenses on the same date, would be afforded significantly different treatment based upon, at best, administrative accident or, at worst, manipulation by the parties, regarding when the transfer order was entered. "Presumably, the legislature did not intend to invite such manipulation of the judicial docket." *State* v. *Burns*, supra, 26.