******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* NATHANIEL S.*
(SC 19592)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued May 2—officially released September 27, 2016*

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, was *Maureen Platt*, state's attorney,
for the appellant (state).

*Alice Osedach*, assistant public defender, for the
appellee (defendant).

*Opinion*

McDONALD, J. A person convicted of a class A or class B felony on the regular criminal docket of the Superior Court may be subject to a lengthy mandatory minimum sentence and may suffer various adverse consequences attendant to a felony conviction. By contrast, a child adjudicated a delinquent on the juvenile docket for committing that same offense is subject to at most four years confinement at the Connecticut Juvenile Training School and is spared many of those attendant consequences. Our juvenile justice statutory scheme requires the automatic transfer of certain cases involving children who have been charged with the commission of a class A or class B felony from the docket for juvenile matters to the regular criminal docket. In 2015, the legislature amended the juvenile transfer statute to increase the age of a child whose case was subject to an automatic transfer by one year, to fifteen years old. Public Acts 2015, No. 15-183, § 1 (P.A. 15-183, or act), codified at General Statutes (Supp. 2016) § 46b-127 (a) (1). Prior to this amendment, the court was required to transfer a case from the juvenile docket to the regular criminal docket in which a child, such as the defendant, Nathaniel S., had been charged with the commission of certain felonies and had attained the *age of fourteen years* prior to the commission of such offenses. See General Statutes (Rev. to 2011) § 46b-127 (a) (1). The question presented by this reserved question of law is whether that amendment applies retroactively, so that the case of a child who has been charged with committing a class A or class B felony prior to the enactment of P.A. 15-183, and whose case already has been transferred to the regular criminal docket, should now have his case transferred back to the juvenile docket. We conclude that the legislature intended that P.A. 15-183 apply retroactively and, accordingly, we answer the reserved question in the affirmative.

The parties agree on the relevant procedural facts. By juvenile arrest warrant dated August 14, 2012, the defendant was charged with, among other crimes, sexual assault in the first degree in violation of General Statutes (Rev. to 2011) § 53a-70 (a) (2), a class A felony, and risk of injury to a child in violation of General Statutes (Rev. to 2011) § 53-21 (a) (2), a class B felony, for acts allegedly committed in early May, 2012. The defendant was fourteen years old at the time of the alleged crimes. On August 4, 2014, the defendant's case was automatically transferred from the juvenile docket of the Superior Court to the regular criminal docket pursuant to General Statutes (Rev. to 2011) § 46b-127 (a) (1). Both at the time of the alleged crimes and at the time of transfer, the transfer statute provided in relevant part: "The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child

charged with the commission of . . . a class A or B felony . . . provided such offense was committed after such child attained the age of fourteen years . . . ." General Statutes (Rev. to 2011) § 46b-127 (a) (1).

On October 1, 2015, while the defendant's case was pending on the regular criminal docket, P.A. 15-183 took effect. Among other things, the act amended § 46b-127 (a) (1) by raising the age of defendants whose cases are subject to automatic transfer from the juvenile docket to the regular criminal docket from fourteen years to fifteen years. See P.A. 15-183, § 1. In response, the state and the defendant jointly requested that the trial court reserve the following question of law for the advice of this court pursuant to General Statutes § 52-235 (a) and Practice Book § 73-1: "Does [P.A. 15-183] apply to the defendant, who is charged with committing [c]lass A and B felonies when he was fourteen years old and had not yet reached the age of fifteen, whose case was transferred to the regular criminal docket of the Superior Court prior to [the act's] effective date, but whose case has not yet been adjudicated and will be adjudicated now that [P.A.] 15-183 has taken effect?" The trial court, *Fasano*, *J.*, granted the request.

The following principles govern our resolution of the reserved question. With respect to criminal statutes, a statute is said to have retroactive application if it applies to crimes allegedly committed prior to its date of enactment. *Robinson* v. *Commissioner of Correction*, 258 Conn. 830, 836 n.7, 786 A.2d 1107 (2002). Whether a new statute is to be applied retroactively or only prospectively presents a question of statutory interpretation over which we exercise plenary review. *Walsh* v. *Jodoin*, 283 Conn. 187, 195, 925 A.2d 1086 (2007). The question is one of legislative intent and is governed by well established rules of statutory construction. Id.

Several rules of presumed legislative intent govern our retroactivity analysis. Pursuant to those rules, our first task is to determine whether a statute is substantive or procedural in nature. *In re Daniel H.*, 237 Conn. 364, 373, 678 A.2d 462 (1996). "[Although] there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 621, 872 A.2d 408 (2005).

If a statute is substantive, then our analysis is controlled by General Statutes § 55-3, which provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect." "[W]e have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall

apply prospectively only. . . . [I]n the absence of any clear expression of legislative intent to the contrary [changes to statutes that create or impose substantive new obligations are therefore] presumptively prospective."[1] (Citation omitted; footnote omitted; internal quotation marks omitted.) *Walsh* v. *Jodoin*, supra, 283 Conn. 195–96.

By contrast, "[p]rocedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . [Accordingly] we have presumed that procedural . . . statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . ."[2] Id., 196. "We have noted, however, that a procedural statute will not be applied retroactively if considerations of good sense and justice dictate that it not be so applied." (Internal quotation marks omitted.) *Narayan* v. *Narayan*, 305 Conn. 394, 403, 46 A.3d 90 (2012). Because, in the absence of clear statutory guidance, these default rules provide a conclusive expression of the presumed intent of the legislature, it rarely will be necessary to consult legislative history or other extratextual sources to ascertain the legislative intent with respect to retroactivity. See *State* v. *Kalil*, 314 Conn. 529, 558–59, 107 A.3d 343 (2014).

Turning our attention to the present case, the parties agree that P.A. 15-183 has both procedural and substantive elements. The defendant, however, contends that the act is primarily procedural in nature and, therefore, presumptively retroactive in its application, whereas the state characterizes the act as having significant substantive effects and, therefore, is presumptively prospective in its application. We agree with the defendant.

There is no doubt that the amended statute, on its face, dictates only a procedure—automatic transfer—for adjudicating the cases of certain children accused of committing class A or class B felonies. For that reason, in *State* v. *Kelley*, 206 Conn. 323, 332, 537 A.2d 483 (1988), this court characterized the juvenile transfer statute as akin to a change of venue and, "by its nature, procedural." The only change effectuated by P.A. 15-183 is to narrow the class of persons to whom this procedure applies. A child who had only attained the age of fourteen when he allegedly committed such crimes is no longer subject to automatic transfer to the regular criminal docket pursuant to General Statutes (Supp. 2016) § 46b-127 (a) (1) and thus his case will remain on the juvenile docket unless other circumstances dictate transfer, pursuant to General Statutes § 46b-145.[3]

The state offers several arguments as to why P.A. 15-183 should be deemed substantive for purposes of retroactivity, notwithstanding its facially procedural nature. We consider each argument in turn.

First, the state argues that the act should be applied on a solely prospective basis because, although the act is facially procedural, it carries various substantive consequences for children accused of committing criminal offenses at the age of fourteen. One consequence of the act, for example, is to mitigate the potential punishment and dispositional options for fourteen year olds charged with class A and B felonies. A fourteen year old transferred to the regular criminal docket pursuant to General Statutes (Rev. to 2011) § 46b-127 (a) will be sentenced as an adult if convicted; see General Statutes (Rev. to 2011) § 46b-127 (c); and may be subject to a lengthy period of incarceration, mandatory minimum sentences, and other consequences attendant to conviction. See General Statutes § 53a-28 et seq. In the present case, for example, if the defendant is convicted on the regular criminal docket of having violated General Statutes (Rev. to 2011) § 53a-70 (a) (2), he will be subject to a mandatory minimum sentence of ten years imprisonment; see General Statutes (Rev. to 2011) § 53a-70 (b) (2) and (3); and may be required to register as a sex offender. See General Statutes § 54-251. By contrast, if he were found guilty of violating a criminal statute following adjudication on the juvenile docket, he would be subject to a maximum period of commitment of four years at the Connecticut Juvenile Training School; see General Statutes (Rev. to 2011) §§ 46b-140 (j) and 46b-141 (a); and would be entitled to receive various rehabilitative and treatment services while so confined. See, e.g., General Statutes §§ 46b-121i through 46b-121*l*. Another consequence of the act, the state notes, is that whether a child is adjudicated on the regular criminal docket or the juvenile docket dictates the nature of the proceedings against him. A conviction of a felony offense on the regular criminal docket is a conviction of having committed a crime; see General Statutes § 53a-24 (a); whereas a child found guilty of violating a criminal statute following adjudication on the juvenile docket is convicted of delinquency and is not subject to the various consequences attendant to a felony conviction. See General Statutes (Supp. 2016) § 46b-146.

The problem with the state's argument is that many, if not most, rules of legal procedure have the potential to be outcome determinative, and thus to have substantive effects, under certain circumstances. See, e.g., See *State* v. *Skakel*, 276 Conn. 633, 684–86, 888 A.2d 985 (addressing retroactive application of statute of limitations), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). If we treat as substantive any procedural statute that impacts substantive rights, then the line between substantive and procedural will become hopelessly blurred. That in turn defeats the purpose of default rules—such as the rule that procedural statutes are presumptively retroactive—which is to maximize the likelihood that, in the absence of

express statutory guidance, a reviewing court will be able to discern the actual intent of the legislature. By contrast, if we retain the rule that facially procedural statutes are presumptively retroactive, then a reviewing court can apply the presumption with a reasonable degree of predictability and the legislature, in turn, can draft legislation with a clear understanding of how it will be interpreted by the courts.[4]

The state's second argument is that *In re Daniel H.*, supra, 237 Conn. 364, and its progeny, stand for the proposition that the substantive/procedural distinction applies only to the civil law, and that all changes to the criminal law are presumptively prospective regardless of whether they are substantive or procedural in nature. The state misreads *In re Daniel H.* In that case, as in our other cases addressing the retroactive or prospective application of criminal statutes, we made clear that purely procedural changes to the criminal law presumptively apply retroactively, subject of course to the requirements imposed by the ex post facto clause of the federal constitution. See id., 372–73; see also *Mead* v. *Commissioner of Correction*, 282 Conn. 317, 323, 920 A.2d 301 (2007); *State* v. *Tabone*, 279 Conn. 527, 537 n.13, 902 A.2d 1058 (2006); *State* v. *Skakel*, supra, 276 Conn. 680; *State* v. *Ross*, 230 Conn. 183, 282, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). When this court stated in *In re Daniel H.* that "[i]n criminal cases, to determine whether a change in the law applies to a defendant, we generally have applied the law in existence on the date of the offense, regardless of its procedural or substantive nature"; *In re Daniel H.*, supra, 377; it was in the context of discussing not the default presumptions but, rather, the predicate determination of whether the issue of retroactivity is even implicated. See id., 376–77. That is to say, whereas certain of our sister states take the position that a substantive criminal statute has retroactive application if it applies to crimes committed before the statute was enacted but that a procedural criminal statute is deemed to have retroactive application only if it applies under circumstances (such as the present case) in which the procedures dictated by the prior law already have been undertaken; see M. Gilmore, "Application of Statutory Changes to Cases in Progress: The Crossroads of the Legislative and Judicial Power— An Analysis of Federal and Idaho Law," 34 Idaho L. Rev. 517, 562 (1998); Connecticut follows the rule that the date of the offense is the touchstone for both substantive and procedural changes to the law. Accordingly, *In re Daniel H.* does not require prospective application of the act.

The state also argues that: (1) retroactive application of the act is barred by the savings statutes; see General Statutes §§ 1-1 (t) and 54-194; (2) applying the act retroactively would lead to the "absurd" consequence that child defendants such as the defendant would receive

the benefit of its application whereas other children who offended at the same time, but who were tried and convicted prior to its enactment, would not; and (3) other states have not applied similar statutory changes retroactively. We are not persuaded.

First, it is well established that § 1-1 (t) does not bar the retroactive application of procedural statutes except to the extent that such application would offend considerations of good sense and justice. See *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 866 n.16, 74 A.3d 1192 (2013). Moreover, § 54-194, by its terms, governs only those statutes that define or prescribe criminal punishments, which P.A. 15-183 does not.

Second, we perceive no absurdity in the fact that retroactive application of the act will affect pending cases but not those that already have reached a final judgment, as this will be true of most retroactive amendments to procedural rules. If the legislature wishes to avoid such a result, it need only specify that a particular procedural change is to be applied only prospectively.

Third, we observe that our sister states, in considering whether changes to their juvenile transfer statutes applied retroactively or only prospectively, have reached differing conclusions. Compare, e.g., *Watts* v. *Commonwealth*, 468 Mass. 49, 59, 8 N.E.3d 717 (2014) (prospective application only), with *State* v. *Walls*, 96 Ohio St. 3d 437, 442, 775 N.E.2d 829 (2002) (retroactive application). Because of the differences in the statutory language, governing statutory regimes, and controlling legal precedents, those decisions are of limited use in construing the intent of the Connecticut legislature with respect to P.A. 15-183.

For these reasons, we conclude that P.A. 15-183 is procedural in nature and that the changes to the automatic transfer provisions of General Statutes (Supp. 2016) § 46b-127 (a) are presumptively to be applied retroactively to all pending cases. We turn next to the text of the act, wherein we perceive nothing that would overcome this presumption of retroactive application. The language of the act itself is silent in this respect, providing an effective date of October 1, 2015, but no express guidance as to retroactive or prospective application. "Because all public acts not specifying an effective date automatically are assigned to take effect on the first day of October following the session of the General Assembly at which they are passed; General Statutes § 2-32; we never have ascribed particular significance to such dates in ascertaining the legislature's intent." (Internal quotation marks omitted.) *Investment Associates* v. *Summit Associates, Inc.*, supra, 309 Conn. 867.

The state argues that the text of other contemporaneous legislation addressed to juvenile sentencing speci-

fies that those amendments are to be applied retroactively, and that the absence of such express language in P.A. 15-183 suggests that the act is intended to apply only prospectively. We disagree.

One week before P.A. 15-183 was signed into law, the governor signed No. 15-84 of the 2015 Public Acts (P.A. 15-84), which made various changes to Connecticut's juvenile sentencing laws. Most sections of P.A. 15-84 merely provide an effective date of October 1, 2015. Unlike P.A. 15-183, however, four sections of P.A. 15-84 contain the following language: "Effective October 1, 2015, *and applicable to any person convicted prior to, on or after said date . . . .*" (Emphasis altered.) P.A. 15-84, §§ 6 through 9. The state contends that the fact that the legislature expressly made certain changes to the juvenile sentencing laws applicable retroactively in contemporaneous legislation, but did not include such language in the relevant provisions of P.A. 15-183, indicates that it did not intend the latter changes to apply retroactively. See *State* v. *Rupar*, 293 Conn. 489, 509, 978 A.2d 502 (2009).

The flaw in this argument is that all the amendments contained in P.A. 15-84 that the state highlights are plainly substantive changes in the law. For example, they specify that juvenile offenders will no longer be subject to the death penalty or to mandatory life imprisonment without the possibility of parole. P.A. 15-84, §§ 6 through 9. Because substantive amendments are presumptively prospective, in order to afford those changes retroactive effect the legislature was required to include express language to that effect. By contrast, because P.A. 15-183 amends the state's criminal *procedure*, the act is presumptively retroactive, and there was no need for the legislature to so specify. Accordingly, we conclude that the plain language of the act, as informed by the statutory presumptions, unambiguously indicates that the amendments to the juvenile transfer statute contained in P.A. 15-183 apply retroactively to cases pending on the effective date of October 1, 2015.[5]

Lastly, we are not aware of any " 'considerations of good sense and justice' " that would preclude retroactive application of P.A. 15-183 in the present case. See *Narayan* v. *Narayan*, supra, 305 Conn. 403. The parties and the trial court sought the guidance of this court at the outset, prior to trial, and there is no indication in the record that the state has relied to its detriment on the defendant's transfer status as an alleged adult offender.[6] Moreover, the rationales that appear to have motivated the adoption of the act apply with equal force to children such as the present defendant who allegedly committed felony offenses prior to its enactment. See footnote 5 of this opinion. Accordingly, we conclude that the legislature intended P.A. 15-183 to apply retroactively to cases such as this.

The reserved question is answered "yes."

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the alleged victim or others through whom the alleged victim's identity may be ascertained. See General Statutes § 54-86e.

[1] Because we conclude that P.A. 15-183 is procedural rather than substantive, we need not determine whether § 55-3 would bar retroactive application of a statute that, while substantive in nature, affords only *benefits* to a criminal defendant and imposes no new obligations on either the defendant or other persons. See *Welch* v. *Wadsworth*, 30 Conn. 149, 158 (1861).

[2] Although at times we have equated procedural rules with those that govern remedies rather than rights, we also have cautioned that reliance on the term "remedial" in this context may unnecessarily confuse the issue, because most statutes—both substantive and procedural—can be considered remedial insofar as they seek to solve a problem, cure an ill, or repair a defect in existing legislation. See, e.g., *Narayan* v. *Narayan*, 305 Conn. 394, 405, 46 A.3d 90 (2012).

[3] Section 46b-145, which was not affected by P.A. 15-183, provides that no child shall be prosecuted for an offense before the regular criminal docket of the Superior Court except as provided in General Statutes (Supp. 2016) § 46b-127 and General Statutes (Supp. 2016) § 46b-133c (f). General Statutes (Supp. 2016) § 46b-133c (f) still permits the transfer of a proceeding involving a child who has attained the age of fourteen to the regular criminal docket if the child has been adjudicated a serious juvenile repeat offender.

[4] We recognize that certain of our cases have indicated that a statute that, "in form, provides but a change in remedy but actually brings about changes in substantive rights is not subject to retroactive application." (Internal quotation marks omitted.) *Walsh* v. *Jodoin*, supra, 283 Conn. 196. That language, however, is better understood as an outgrowth of the well established principle that even new procedural rules will not be applied retroactively when to do so would impair vested rights and thus implicate considerations of good sense and justice. See *State* v. *Skakel*, supra, 276 Conn. 684–86 (connecting these principles).

[5] Even if the statutory language were ambiguous, nothing in the legislative history of P.A. 15-183 compels a different result. It is reasonable to assume that the amendments to § 46b-127 were motivated by an emerging understanding of youth behavior and a recognition that fourteen year olds are more amenable than adults to rehabilitation and that their needs may more effectively be served within the juvenile justice system. See 58 H.R. Proc., Pt. 11, 2015 Sess., pp. 5090–93, remarks of Representative Robyn Porter. Such purposes apply with equal force to children whose offenses were committed prior to the effective date of the act.

[6] We need not, and do not, decide whether retroactive application of P.A. 15-183 might be barred as unjust in a case in which a trial on the regular criminal docket already had commenced at the time the act came into effect.

---