FLEET CREDIT CORPORATION *v.* DONALD F. MILLER, COMMISSIONER OF REVENUE SERVICES

PRODUCTO MACHINE COMPANY ET AL. *v.* DONALD F. MILLER, COMMISSIONER OF REVENUE SERVICES
(15515)
(15516)
(15517)

Dupont, C. J., and Schaller and Daly, Js.

Argued November 12, 1996—officially released March 18, 1997

*Richard K. Greenberg*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (defendant).

*Donald E. Frechette*, for the appellee (plaintiff Fleet Credit Corporation).

*Jeremy Mellitz*, for the appellees (plaintiff Producto Machine Company et al.).

DUPONT, C. J. This appeal involves three consolidated cases. Two of the cases are actions brought by Fleet Credit Corporation (Fleet) against the defendant commissioner of revenue services (commissioner) and involve the taxable years 1992 and 1993.[1] The third case is an action brought by Producto Machine Company

---

[1] Fleet's actions involving 1992 and 1993 are referred to as *Fleet I* and *Fleet II*, respectively.

(Producto)[2] against the commissioner and involves the taxable year 1993. All the suits seek refunds of the interest paid by the plaintiffs on amounts calculated by the commissioner to be due because of alleged underpayments of estimated corporate tax. Fleet and Producto filed separate motions for summary judgments with accompanying affidavits. The commissioner filed a cross motion for summary judgment in each case. The trial court found that there were no genuine issues of material fact and rendered judgments in all three cases for the plaintiffs as a matter of law. We affirm the judgments of the trial court.

General Statutes (Rev. to 1995) § 12-242b requires corporate plaintiffs such as Fleet and Producto to make quarterly declarations of their estimated Connecticut corporation business (income) taxes.[3] The issues in *Fleet I* and the Producto case involve the corporate estimates of income and the accuracy of the estimates relative to the actual tax liability of Fleet and Producto for the taxable years in question.

The relevant facts of *Fleet I* are those that follow. Fleet declared its quarterly estimates for the taxable year 1992 in March, June, September and December of 1992, as required by § 12-242b. In the first quarter, Fleet estimated that its yearly taxable income would be $4,955,768, and, therefore, determined that its tax liability for the year would be $657,905. According to General

---

[2] Two wholly owned corporate subsidiaries of Producto were also named as plaintiffs.

[3] This case involves the taxable years 1992 and 1993. Section 12-242b was repealed by No. 95-327 of the 1995 Public Acts. Section 12-242b (a) as it existed in the years in question provided: "With respect to each income year which begins on or after January 1, 1987, every company subject to taxation under part I of [chapter 208] shall make a declaration of estimated tax either if (1) the tax required to be paid by it for such income year can reasonably be expected to exceed one thousand dollars, or (2) the tax, if any, required to be paid by it for the next preceding income year exceeded one thousand dollars."

Statutes § 12-242c, Fleet needed to pay 30 percent of this estimated tax liability by March 15, 1992.[4] Fleet paid $200,000, a sum in excess of 30 percent of its estimated tax liability. In the second quarter, Fleet amended its estimate of yearly taxable income in anticipation of an increase in taxable income to $51,966,945. This amendment increased Fleet's tax liability for 1992 to $6,604,819. Fleet paid 70 percent of this estimated tax liability by June 15, 1992. In the third quarter, Fleet amended its estimate of taxable yearly income again, with an estimate of $53,657,691. By doing so, Fleet increased its tax liability for 1992 to $6,818,948. In order to comply with the statute, therefore, Fleet was required to pay, and did pay, 80 percent of its estimated taxes, $755,158, by September 15, 1992. In the fourth quarter, Fleet's final amended estimate of its taxable yearly income rose to $117,837,484, creating a tax liability of $13,789,685. According to the statute, therefore, Fleet needed to pay 100 percent of its estimated tax liability by December 15, 1992, which Fleet paid with its last declaration of estimated income for 1992. The trial court found that Fleet's declarations of estimated tax liability for each quarter were reasonably made when filed on the basis of information available at that time, and that

---

[4] General Statutes § 12-242c was repealed by No. 95-327 of the 1995 Public Acts. During the taxable years in question § 12-242c provided: "Every company filing a declaration with respect to an income year as required by section 12-242b shall make payment to the commissioner of installments on account of the estimated tax stated therein as at the time last amended, as follows: (1) On or before the fifteenth day of the third month of said income year, an amount equal to thirty per cent of said estimated tax, (2) on or before the fifteenth day of the sixth month of said income year, an amount equal, together with all prior payments on account of said estimated tax, to seventy per cent of said estimated tax, (3) on or before the fifteenth day of the ninth month of said income year, an amount equal, together with all prior payments on account of said estimated tax, to eighty per cent of said estimated tax, and (4) on or before the fifteenth day of the twelfth month of said income year, an amount equal, together with all prior payments on account of said estimated tax, to one hundred per cent of said estimated tax."

payments of the estimated tax as declared were made at the time of filing.

At issue is Fleet's fourth quarter income, and its effect on Fleet's quarterly estimates of its taxable income for the entire year of 1992. In the fourth quarter, Fleet, on the advice of the Fleet Financial Group, began selling treasury bonds. These sales generated about $82 million in taxable income, which substantially increased the total taxable income that Fleet had previously declared in its quarterly returns as its estimates for the year. The trial court found the profits from the bond sales to be "unanticipated—and unanticipatable—monetary windfalls . . . ."

In February, 1994, the commissioner claimed that, because Fleet's first, second and third quarterly estimates of corporate income for 1992 did not reflect the income eventually generated by the sale of the treasury bonds in the fourth quarter, Fleet had underpaid its 1992 taxes. The commissioner stated that Fleet's quarterly estimated payments should have reflected the gains realized from the sale of the treasury bonds, even though that gain was not realized at the time the first three quarterly returns were filed and the tax due on the estimated yearly income was paid. As a result, the commissioner found that Fleet owed interest pursuant to General Statutes § 12-242d on what he characterized as underpayments of Fleet's 1992 taxes.[5] The commis-

[5] General Statutes § 12-242d was amended by No. 95-327 of the 1995 Public Acts. During the taxable years in question, that statute provided in relevant part: "(a) In addition to the taxes provided for by part I of this chapter with respect to any income year which begins on or after January 1, 1982, every company, subject to taxation under said part which has not, as provided in section 12-242c, made payments on account of the tax for such income year, (1) on or before the fifteenth day of the third month of the income year, of an instalment at least equaling the lesser of (A) thirty per cent of such tax for such income year or (B) sixty per cent of the assumed tax, as defined in subsection (d) of this section, with respect to such income year, (2) on or before the fifteenth day of the sixth month of the income year, of an instalment at least equaling seventy per cent of the tax for such income

sioner levied on the refund that Fleet expected from its calculated overpayment of 1992 taxes. Fleet had applied that overpayment to its 1993 taxes. Fleet claimed that the commissioner's assessment of interest was improper because the fourth quarter income was unanticipated at the time the quarterly declarations of estimated income were made. The ensuing dispute became *Fleet I*.

Fleet's second action against the commissioner (*Fleet II*) involves its 1993 taxes. Fleet, anticipating a refund from its 1992 tax payments, had applied the refund as a set off against its 1993 tax liability estimates and resulting quarterly installment payments. Due to the commissioner's levy on the 1992 refund based on his finding that Fleet owed interest because of its under-payment of taxes for the first three quarters of 1992, Fleet did not receive a credit for the refund. The commissioner claims that even if we conclude he could not assess interest for underpayment of the 1992 taxes, we should reverse the judgment in *Fleet II* because Fleet underpaid its 1993 taxes. The commissioner, therefore, claims that Fleet improperly credited itself with an anticipated refund of an overpayment of its 1992 taxes

---

year, (3) on or before the fifteenth day of the ninth month of the income year of an instalment at least equaling eighty per cent of such tax for such income year and (4) on or before the fifteenth day of the twelfth month of the income year, of an instalment at least equaling one hundred per cent of the tax for such income year, shall on or before the due date for filing the final return for such income year prescribed in section 12-222 pay to the commissioner interest on the part of any such instalment not so paid, at the rate of one and one-fourth per cent per month or fraction thereof from the aforementioned date relating to the instalment to the date of payment. Any such instalment payment shall be determined on the basis of an estimated tax which is not less than ninety per cent of the tax determined to be due for such income year; provided any credit that may otherwise be taken pursuant to section 12-217t shall be disregarded in determining the tax to be due for all filings, except a filing made in accordance with section 12-222 and provided further any credit that may otherwise be taken under section 12-217n shall be disregarded in determining the tax to be due for any income year commencing before January 1, 1997."

against its first installment of estimated taxes for 1993, thereby underpaying its 1993 taxes.

Producto's case is similar to that of *Fleet I* because it also deals with underestimated tax liability due to income that the trial court found was unforeseen at the time Producto filed its quarterly estimates of tax due. Producto is a corporation that owns two subsidiaries, Moore Tool Company, Inc., and Moore Land Company, Inc. Unlike Fleet, which has a calendar year for accounting purposes, Producto has a fiscal tax year that ends on March 31. On December 28, 1993, Moore Land Company purchased Moore Special Tool Company, an unrelated entity. At the time of the purchase, Producto had, on December 15, 1993, already filed its declaration of estimated tax return for the third quarter.

Producto filed a combined corporate return for the taxable year ending March 31, 1994. It paid its taxes every quarter in the year 1993-1994, based on its estimates of yearly income in the percentages required by the statute. Its payment in the fourth quarter reflected the income generated from the acquisition of Moore Special Tool Company. The commissioner claimed that Producto had not paid the requisite amount of its taxes with each quarterly declaration filed, taking into account the fourth quarter income generated by the acquisition, and charged Producto interest pursuant to § 12-242d. Producto and the commissioner entered into a stipulation of facts in which the commissioner agreed that the acquisition was not anticipated at any time prior to the fourth quarter and that Producto could not have reasonably predicted the income ultimately realized.

The commissioner raises two claims on appeal. His first claim, which relates to both Fleet and Producto, is that the trial court improperly ordered him to refund the interest on the alleged underpayments. His second

claim, made in *Fleet II*, is that Fleet should not have been able to use the anticipated tax refund from 1992 toward payment of its 1993 taxes. The commissioner makes no claim that the estimates of yearly income by either Fleet or Producto for the first three quarters of the relevant years did not reflect the amount of income reasonably to be expected at the time each quarterly payment and declaration of estimated income were made.

The dispositive issue is whether a corporation's quarterly payments based on its estimates of taxes due are underpaid if the quarterly estimates of income reflect the yearly income reasonably anticipated at the time of the filings but do not reflect the actual income realized by the end of the year. The commissioner's position is that interest was due whether or not the income eventually realized was reasonably anticipated at the time a quarterly declaration of estimated tax was due.[6]

The position of Fleet and Producto is that, if there has been compliance with § 12-242c, any issue as to

[6] At oral argument, the commissioner stated that no determination was ever made as to whether the additional Fleet income could have been reasonably predicted or whether the estimates were made in good faith. At the time the summary judgment motions were considered by the trial court, however, no factual issues were raised as to these matters. For purposes of this appeal, we take it as undisputed that both Fleet and Producto made reasonable declarations of taxable income, in good faith, at the time the declarations were made. We are, thus, not concerned with an interpretation of "reasonably" as used in § 12-242b (a), which provides in relevant part: "With respect to each income year which begins on or after January 1, 1987, every company subject to taxation under part I of this chapter shall make a declaration of estimated tax either if (1) the tax required to be paid by it for such income year can *reasonably* be expected to exceed one thousand dollars . . . ." (Emphasis added.) We note that the statute imposes a standard of reasonableness when describing estimates. We also note that the motions for summary judgment of both Fleet and Producto and of the commissioner were based on the fact that neither Fleet nor Producto could reasonably have anticipated the actual fourth quarter income at the time their first three quarterly tax returns were filed. We are not dealing, therefore, with a corporation that has attempted to avoid payment of taxes by not making a reasonable quarterly estimate of tax due.

the proper interpretation of § 12-242d, which relates to interest due on unpaid instalments, is never reached.[7] The commissioner's position is that § 12-242d allows him to collect interest even if the taxpayer has complied with § 12-242c. In other words, the commissioner claims that when the situation at the end of the taxable year makes it clear what amount is 90 percent of the actual tax for the year, he may retroactively review each installment paid and determine whether 30 percent of that amount was paid in the first quarter, whether 70 percent was paid in the second quarter, and whether 80 percent of that amount was paid in the third quarter. It, thus, would make no difference, in the commissioner's view, whether the income eventually realized could or could not have been anticipated reasonably at the time each quarterly declaration was made.

The issue raised by *Fleet I* and Producto is one of first impression. Whether the commissioner can assess interest on quarterly estimates for the entire year because of income not reasonably anticipated during the year and not realized until the fourth quarter, however, is not likely to recur often due to the repeal of §§ 12-242a, 12-242b and 12-242c and the amendment of § 12-242d by No. 95-327 of the 1995 Public Acts.

The interpretation by the commissioner of §§ 12-242a through 12-242d requires application of the principles of statutory interpretation. "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circum-

---

[7] Fleet and Producto further argue that if § 12-242d can be applied in this case it is unconstitutional because it violates the due process clause of the fourteenth amendment of the United States constitution. We need not reach this question because of our conclusion that, in this case, § 12-242c governs the outcome. We note that the trial court did not reach any issues relating to constitutionality.

stances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Stratford* v. *State Board of Mediation & Arbitration*, 239 Conn. 32, 40–41, 681 A.2d 281 (1996). "In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 689, 674 A.2d 1300 (1996).

Section 12-242b (a) clearly states that it is the taxpayer's responsibility to make declarations of estimated tax each quarter. The definition of estimated tax in § 12-242a (c) is "the amount of money a company *elects* to state pursuant to subsection (b) of § 12-242b in the declaration required by subsection (a) of said section." (Emphasis added.) The dictionary definition of "elect" is to choose or select. Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). Use of the term "elects" indicates an intention by the legislature to allow a corporate taxpayer some degree of discretion in determining what is a reasonable estimate. Section 12-242b (a) (1), in describing the necessity of making a declaration of estimated tax, uses the words "the tax required to be paid . . . can reasonably be expected . . . ."

Section 12-242b (b) provides that "[t]he estimated tax stated in the declaration shall be the amount of money, reduced by one thousand dollars, *which the company estimates will equal the total tax which will be required* to be paid by it for such income year." (Emphasis added.) The commissioner is reading this section as though the words "which the company estimates" were absent and as though the words were "the total tax required" instead of "the total tax which will

be required to be paid . . . ." The plain meaning of § 12-242b (b) is that the estimated tax stated in the declaration is the amount of money that the company estimates will equal the total tax that will be required to be paid by it. An estimate is defined as "a tentative evaluation or rough calculation; a judgment based on one's impressions; an opinion." American Heritage Dictionary (2d College Ed. 1982). An estimate is a rational prediction, not an exact figure as the commissioner argues it should be.

Section 12-242d, entitled "Interest on unpaid instalments" provides that "every company . . . which has not, as provided in section 12-242c, made payments on account of the tax for such income year . . . shall . . . pay to the commissioner interest . . . ." Unless, therefore, § 12-242c has not been satisfied, § 12-242d is not called into play. Both Fleet and Producto complied with § 12-242c. That section requires payments of estimated tax as stated in the declarations as required by § 12-242b. After considering the statute as a whole, we conclude that the trial court's interpretation is reasonable.

We conclude that any ambiguity of § 12-242d need not be resolved because that section is never reached if the corporate taxpayer has made reasonable estimates pursuant to the preceding sections. In other words, the only way that a corporate taxpayer can fall within the purview of § 12-242d is if it makes an unreasonable estimate or if it did not pay the requisite percentages set forth in § 12-242c. The commissioner has not alleged that Fleet or Producto did either of those things. The words of the statutes themselves, therefore, indicate that the legislature intended that if a corporation makes a reasonable estimate of anticipated income as of the time of filing its declaration of estimated tax and pays the requisite percentage of tax due, no interest under

§ 12-242d can be due.[8] When the plain words of the statute evince the intent of the legislature, we need not look to its legislative history. See *Rivera* v. *Allstate Ins. Co.*, 44 Conn. App. 47, 51, 686 A.2d 530 (1996).

On the basis of our statutory interpretation of §§ 12-242a through 12-242c, we conclude that the commissioner should not have required either Fleet or Producto to pay any interest for the years in question.

We turn now to the commissioner's argument that we should reverse the judgment in *Fleet II* because Fleet improperly took a credit against its first estimated tax payment in 1993 in an amount equal to a refund Fleet expected from its 1992 taxes, based on a preliminary tax return that Fleet had filed with a request for extension of time to file the final tax return. We have already determined that the commissioner should not have applied Fleet's overpayment of its 1992 taxes to the interest assessment. The commissioner additionally argues that Fleet violated General Statutes § 12-242g[9]

[8] Section 12-242d has been amended by No. 95-327 of the 1995 Public Acts so that by the year 2000, no interest will be due if a corporation pays its quarterly taxes based on 90 percent of actual income for the year or based on 100 percent of the taxes paid in the preceding year. Such a "safe harbor" statute means that if the requisite payments are made, they are free from challenge and free from the payment of interest, no matter what circumstances surround the estimates because the statute is now based on a calculation capable of mathematical certainty.

The legislature, in enacting the amendment, was concerned with the possibility of an unfair or punitive application of § 12-242d. "The existing law, unlike corresponding federal provisions does not contain any safe harbors by which a taxpayer can, with certainty, compute its estimated tax obligations and avoid Connecticut, additional interest. . . . So this is the first time, at least in my memory, that we are taking a shot at trying to bring Connecticut corporate and insurance premium tax laws a safe harbor concept." 38 H.R. Proc., Pt. 20, 1995 Sess., pp. 7249, 7251, remarks of Representative Carl Schiessl.

[9] General Statutes § 12-242g provides in relevant part: "If a company has paid as an instalment of estimated tax an amount in excess of the amount determined to be the correct amount of such instalment, such amount shall be credited against any unpaid instalment or against the tax. If the amount already paid, whether or not on the basis of instalments, exceeds the amount

because the credit it took was its estimated overpayment, rather than its actual overpayment.

The argument that Fleet failed to comply with § 12-242c in 1993 because its first payment was reduced by the amount of the anticipated refund was not raised before the trial court until after judgment had been rendered against the commissioner on his claim in *Fleet II*. The trial court did not address this issue in any additional memorandum of decision, and the commissioner took no steps to have the trial court articulate its reasoning with regard to the issue. An examination of the transcript of the commissioner's attempt to raise the issue reveals that the trial court viewed this argument as a new theory, not raised by the commissioner in its cross motion for summary judgment or in its opposition to Fleet's motion for summary judgment.

Judgment had already been rendered holding that Fleet had not violated § 12-242c in 1993. "A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion and will not be disturbed . . . unless it acted unreasonably and in clear abuse of its discretion." *Cislo* v. *Shelton*, 40 Conn. App. 705, 714, 673 A.2d 134, cert. granted on other grounds, 237 Conn. 924, 677 A.2d 946 (1996). On this record, we cannot say that the trial court abused its discretion in failing to rule in the commissioner's favor on this claim. We do not reach the merits of the commissioner's claim, made after judgment, that Fleet failed to comply with § 12-242g when it reduced its first quarterly tax payment for 1993 by the amount it anticipated would be a refund.

The judgments are affirmed.

In this opinion the other judges concurred.

---

determined to be the correct amount of the tax, the company shall be paid by the State Treasurer, upon order of the Comptroller, the amount of such overpayment. . . ."