[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
At its meeting of October 11, 2000 the defendant, Planning and Zoning Commission of the Town of Bridgewater (hereinafter "the defendant") denied the plaintiff's application for approval of a three lot subdivision which would have permitted construction of an affordable housing development as that term is defined in Section 8-30g (a)(1)(B) of the General Statutes. Notice of decision was published on October 20, 2000. On October 27, 2000 the plaintiff purported to file a proposed modification of the denied application by delivering to the defendant a letter which made reference to certain enclosures which the plaintiff claims, when taken together, satisfy the requirements of § 8-30g
(h). On November 8, 2000 the commission denied the proposed modification. Publication was made on November 17, 2000 and this appeal CT Page 6798 followed.
The defendant launches a threshold assault on the jurisdiction of the court to entertain this appeal but expresses that assault in terms of failure of the plaintiff to meet the requirements for an affordable housing appeal under § 8-30g. After hearing evidence and extensive argument on the point the court asked for and received supplemental briefs, took evidence on two separate dates limited to this issue and ordered a second set of supplemental briefs.
Before addressing the procedural, jurisdictional issue the court first must address the issue of aggrievement. That issue is not in dispute. Notwithstanding, the court required production of evidence which shows that the plaintiff has been the uninterrupted owner of the property at all times pertinent to this appeal. Goldfeld v. Greenwich Planning Zoning Commission, 3 Conn. App. 72 (1986). The evidence also supports the statutory requirement that the plaintiff be a person whose affordable housing application was denied. § 8-30g (f).
At the conclusion of these proceedings the court announced that it would decide this jurisdictional issue before proceeding to its consideration of the merits of the appeal.
 I. Inland Wetlands/Watercourse Regulations and Subdivision Regulations
Inland wetland regulations which prescribe the number of copies of an application for a permit or the number of plans and drawings required to be submitted to the Inland Wetlands Commission have no application to a proposed modification which is filed with a planning and zoning commission pursuant to subsection (h) of § 8-30g. Such an agency is not a zoning or planning authority within the meaning of § 8-30g (a)(4).
As for the Bridgewater subdivision regulations, no effort was made either to return them as part of the administrative record or to offer them as an exhibit at the evidentiary hearing. So, as far as the court knows these regulations are silent on the nature of the materials which must accompany a subdivision application.[1] However, even if the regulations were to require that subdivision applications be accompanied by a certain number of copies of the subdivision plan as well as other written materials; such regulations would have no application to a plan for an affordable housing development, and lack of compliance with those regulations may not constitute the basis for denial of an affordable housing application. Wisniowski v. Planning Commission, 37 Conn. App. 303
CT Page 6799 (1995). This is precisely why the case law which the defendant cites in its brief is inapposite. All of the cited authorities deal with conventional subdivisions and not affordable housing subdivisions. A subdivision regulation may not be in conflict with or limit a developer's rights under § 8-30g.
 II The Relationship Between Inland Wetlands/Watercourse Application and Section 8-30g
The defendant contends that prior to October 1, 2000 both, the original application and the modified proposal were governed by a statutory provision (§ 8-30g (h)) which mandated that the defendant render a decision within 45 days of receipt of the proposed modification or else the proposed modification shall be deemed to have been rejected The argument continues that because the inland wetlands commission had not acted on the proposed modification itself there was no practical way that the defendant could have completed its duties within the 45 day period and therefore the defendant was bound to deny the plaintiff's proposed modification.
This argument fails for several reasons. First, if the defendant had not published notice of denial of the proposed modification on October 20, 2000, there is no reason to think that the Inland Wetlands Commission would not have rendered its report in time for the defendant to act, especially since the Inland Wetlands Commission had already given extensive consideration to the prior application. Moreover, there is nothing in subsection (h) which prohibits a developer from waiving the 45 day limit, thereby avoiding rejection. Second, Public Act 00-206 became effective 27 days prior to the date of filing of the proposed modification so retroactivity is not an issue. This act enlarged the approval period to 35 days after the decision of the Inland Wetlands Commission.
Next, the defendant contends that Public Act 00-206 "affected the plaintiff's substantive rights" and therefore cannot be applied retroactively to an application which was filed prior to the act's effective date. This argument overlooks the fact that the amendment made in Public Act 00-206 has nothing to do with the original application but rather is limited to and applies only to the proposed modification which comes into existence only after the zoning authority has acted on the original application. For the same reason, the defendant's argument based on automatic inferred approval of subdivision applications if not acted on within the mandated statutory time frame likewise does not apply here. CT Page 6800
Finally, our courts have consistently held that procedural or remedial statutes are deemed to apply retroactively absent a clear expression of legislature intent to the contrary Miano v. Thorne, 218 Conn. 170, 175
(1991). There is no doubt that § 8-30g is a remedial statute Kaufmanv. Zoning Commission, 232 Conn. 122, 140 (1995), and besides Public Act 00-206 is strictly procedural. Therefore, the document which the plaintiff filed on October 27, 2000 was governed by Public Act 00-206, not its predecessor.
 III The Meaning of "Proposed Modification" Under Subsection (h)
Section 8-30g (h) authorizes one who has had an original application for an affordable housing development denied, to file within the appeal period a "proposed modification of its proposal responding to some or all of the objections articulated by the commission". In the context of an original affordable housing application as defined in § 8-30g (a)(2) our Supreme Court has said that detailed plans need not accompany the original application for an affordable housing development for the primary reason that such plans might impose an unjustifiable expense on a developer. Kaufman v. Zoning Commission Id. at 140-141. There is no reason to believe that the legislature would have imposed any more exacting a standard on a subsection (h) proposed modification.
Neither side has presented the court with case law construing the pertinent language of subsection (h). Moreover, the statute offers no definition of "modified proposal". The court must therefore resort to recognized principles of statutory construction. Words used in a statute shall be construed according to commonly approved usage of the language.Martone v. Lensink, 207 Conn. 296, 302 (1988). Where the language used by the legislature is plain and unambiguous, there is no room for statutory construction by the courts and the statute will be applied as its words direct. Verrastro v. Siversten, 188 Conn. 213, 220 (1982)."In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result."King v. Board of Education, 203 Conn. 324, 332-333 (1987). "A statute should not be interpreted to thwart its purpose." Kron v. Thelan,178 Conn. 189, 192 (1979). The court can not read into the terms of a statute something which manifestly is not there. Johnson v. Manson,196 Conn. 309, 310 (1985).
In the field of family law, the term "modification" is given its ordinary meaning, to wit: a change; an alteration or amendment which introduces new elements into the details, or cancels some of them but CT Page 6801 leaves the general purpose and effect of the subject matter in act".Rosato v. Rosato 44 Conn. App. 533, 535 (1996). When determining the meaning of a word "it is appropriate to look to the common understanding of the term as expressed in a dictionary. In re: Joshua S., 260 Conn. 182,201 n. 19 (2000), State v. Indrisano, 228 Conn. 795, 809 (1934). The word "propose" means to put forth for consideration or acceptance. Webster's New World Dictionary 2nd College. Ed. at 1140. The word "respond" means to answer or reply. Id. at 1221.
 IV Factual Support for Satisfaction of Submission Requirement of Subsection (h)
The court must now examine that which was filed with the defendant to determine whether the submission satisfied the requirements of the statute. The record returned to court reveals that on October 27, 2000 the plaintiff filed with the commission a letter which he claims does exactly that. (Record, Item #1).
An analysis of the letter reveals that its opening sentence states that the developer is filing "an amendment to the original proposal to address the reasons for denial of the application". The letter refers to and incorporates by reference three distinct sets of materials. The first is a copy of the amended application to the Inland Wetlands Commission which was filed with the commission simultaneously with item #1. Next are two letters which apparently had not been made available to the commission at the time that it denied the original application. The third set of materials consist of more "documents, reports and details to address the issues". The letter went on to explain "these are the same reports, documents and drawings that have been submitted to the Bridgewater Conservation and Inland Wetlands Commission."
On February 15, 2002 the court continued an evidentiary hearing which began on January 18, 2002 for the limited purpose of attempting to determine precisely what accompanied item #1 when it was filed on October 27. The court heard testimony from the Bridgewater town clerk and the Bridgewater land use coordinator. The court makes the following factual findings concerning the October 27 filing.
Because the office of the land use coordinator was not open at the time, the filing was made at the office of the town clerk. On the following day the town clerk delivered the filed material to the land use coordinator. The coordinator testified that she found only one set of three maps which she believed were designated for the Inland Wetlands Commission because regulations of that commission require that three sets CT Page 6802 of maps accompany any application. The defendant requires its own separate set of three maps so there should have been a total of six maps filed with the town clerk.
On the contrary, the plaintiff, John F. Carr testified that he recalled filing six sets of plans, viz: three for the Inland Wetlands Commission and three for the defendant.
When she examined the materials, in addition to the three sets of maps, the coordinator found an application to the Inland Wetlands Commission and item #1. At the evidentiary hearing the plaintiff introduced into evidence a copy of an application to the Inland Wetlands Commission dated "10/27/00 Resubmitted". Attached to that resubmitted application were numerous documents. Together, they constitute a single exhibit (plaintiff's Ex. 4). It is logical for the court to infer that these documents were attached to the resubmitted application when filed.
Having examined all of the above documents and having compared them with the reasons for denial articulated by the defendant in its decision of October 11, 2000 it is apparent that at least some of the materials which were filed were offered in response to at least some of the defendant's articulated objections (reasons). For instance, John F. Carr's letter of October 4, 2000 purports to address reason 2a and his letter of September 18, 2000 purports to address reason 5a. Reason 3 invited the applicant to submit more detailed and specific information to the Inland Wetlands Commission which the revised Inland Wetlands application of October 27 and accompanying materials sought to do. Moreover, Mr. Carr testified that while the plans and drawings did not reflect any change in the proposed subdivision, the documents contained data that if linked up with the other materials filed that day would constitute a proposed modification within the meaning of the statute. In fact, defendant's counsel has conceded that if the necessary "copies" were filed with the defendant such filing would have sufficed to satisfy the statute. As stated above, the court finds that documents sufficient to constitute a proposed modification within the meaning of § 8-30g
(h) were in fact filed.
Even if the only document filed with the defendant was the October 27, 2000 letter (Item #1) nothing more was required for two reasons. First, because the defendant's reliance on the Bridgewater subdivision regulations as the standard for completeness of a subsection (h) proposal is misplaced for it is the language of subsection (h) which controls and not the subdivision regulations, and second because that letter incorporated by reference the written materials to which it referred.
Additionally, as evidenced by its minutes of the meeting of November CT Page 6803 8, 2000 (Item #2) the defendant misconstrued the requirements of the statute. The defendant rejected the plaintiff's proposed modification because it did not "modify the subdivision in any respect and therefore does not constitute a modification of the application." There is nothing in § 8-30g which requires that the original applicant modify theapplication. All the statute requires is a "proposed modification of itsproposal which responds to previously articulated objections." As mentioned above, by assigning a specific definition to "affordable housing application" § 8-30g (a)(2) and not defining the term "proposal", the legislature has clearly distinguished between the two.
The drawings in controversy (plaintiff's Ex. 3) are clearly marked as "revisions of 10-12-00 which is the day after the date on which the defendant denied the original application. Whether these revisions in fact modify the original proposal has never been determined by the defendant because the defendant held the plaintiff to a standard that does not exist in the law, viz: a modified subdivision application.
In misunderstanding its responsibility under § 8-30g the commission acted illegally and arbitrarily, thus denying the plaintiff his statutory right to a public hearing to which he was entitled by virtue of the fact that a public hearing was held on the original application. Because the proposed modification has never been heard and considered on its merits, this appeal is remanded to the defendant for this purpose in accordance with § 8-30g (g)(h).
 ___________________ Mottolese, Judge