******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TIMOTHY GRIFFIN *v.* COMMISSIONER OF CORRECTION
## (SC 20179)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The petitioner sought a writ of habeas corpus, claiming that the transfer of
his criminal case, which involved crimes that he committed when he
was fourteen years old, to the regular criminal docket from the docket
for juvenile matters, and his subsequent sentence of forty years imprison-
ment with no eligibility for parole, violated the prohibition against cruel
and unusual punishment as set forth in the due process provisions of
the Connecticut constitution (article first, §§ 8 and 9). The petitioner,
who had been convicted of felony murder and conspiracy to commit
robbery in the first degree, claimed that contemporary standards of
decency regarding acceptable punishments for children who engage in
criminal conduct have evolved for purposes of his constitutional claim,
relying on two recent modifications to the juvenile justice laws (P.A.
15-183 and P.A. 15-84) as evidence of this evolution. Public Act 15-183
raised the minimum age of a child whose case is subject to transfer
from the docket for juvenile matters to the regular criminal docket from
fourteen to fifteen years and further limited the types of felonies that
are subject to such a transfer. After the passage of P.A. 15-84, all persons
who are serving a sentence of more than ten years of imprisonment for
a crime or crimes that were committed as a juvenile, including the
petitioner, may be eligible for parole. In support of his habeas petition,
the petitioner claimed that P.A. 15-183 applied retroactively to all persons
currently serving an adult length sentence for a crime committed at
fourteen years of age. The habeas court granted the respondent's motion
for summary judgment and rendered judgment thereon, from which the
petitioner, on the granting of certification, appealed, seeking to have
this court extend to this case the rationale in *State* v. *Santiago* (318
Conn. 1), in which the court held that the legislature's prospective
repeal of the death penalty demonstrated that contemporary standards
of decency had evolved such that the imposition of the death penalty on
inmates convicted of capital felonies committed prior to that prospective
repeal violated the state constitution's prohibition against excessive and
disproportionate punishment, and that the prospective repeal of the
death penalty applied retroactively to all death sentences. *Held*:
1. The passage of P.A. 15-183 did not signal a change in society's evolving
standards of decency, and, accordingly, the transfer of the petitioner's
case from the docket for juvenile matters to the regular criminal docket
for crimes he committed when he was fourteen years old comported
with such standards and did not violate the state constitution's prohibi-
tion against cruel and unusual punishment: this court declined to extend
the rationale of *Santiago* to the present case in light of the different
circumstances presented in those cases, differences in the historical
development of public policies concerning the imposition of the death
penalty and the transfer of juvenile cases, and the fact that the legisla-
ture's prospective repeal of the death penalty applied under all circum-
stances whereas P.A. 15-183 did continue to allow for the transfer of a
fourteen year old's criminal case to the regular criminal docket under
very narrow circumstances; moreover, this court declined the petition-
er's invitation, in furtherance of his constitutional claim, to apply P.A.
15-183 retroactively to all persons currently serving an adult length
sentence for a crime committed at fourteen years of age.
2. The petitioner could not prevail on his claim that his sentence violated
the state constitution's prohibition against cruel and unusual punishment
even after the provisions of P.A. 15-84 entitled him to eligibility for
parole after serving 60 percent, or twenty-four years, of his original
forty year sentence, this court having recently rejected similar claims
challenging the length of a sentence imposed after the transfer of a
juvenile's criminal case to the regular criminal docket in *State* v.

*McCleese* (333 Conn. 378) and *State* v. *Williams-Bey* (333 Conn. 468), and, accordingly, the Connecticut constitution did not entitle the petitioner to be resentenced for his conviction: unlike inmates serving life sentences and functional life sentences with no possibility of parole, the petitioner now will be eligible for parole after serving twenty-four years, one year less than the mandatory minimum sentence for adults convicted of felony murder, providing him with a chance for reconciliation with society and hope for his future; moreover, it was not practicable to grant the petitioner's request to reverse his judgment of conviction, to vacate his sentence imposed twenty years ago and to order a new trial, as the petitioner, who is now approximately thirty-five years old, is unable to have access to the juvenile justice system and its associated rehabilitation programs because of his age, and the parole board would be the better venue for relief when the petitioner becomes eligible for parole, at which time the board will consider various factors, including his age and circumstances when he committed the crimes.

(*One justice concurring in part and dissenting in part*)

Argued January 17—officially released August 23, 2019*

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Sferrazza, J.*, denied the petitioner's motion for summary judgment, granted the respondent's motion for summary judgment and rendered judgment denying the petition, from which the petitioner, on the granting of certification, appealed. *Affirmed.*

*John C. Drapp III*, assigned counsel, for the appellant (petitioner).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Emily D. Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

KAHN, J. The issue presented in this appeal[1] is whether the transfer of a fourteen year old defendant's case to the regular criminal docket and his subsequent sentence of forty years imprisonment violate the prohibition against cruel and unusual punishment enshrined in the dual due process provisions of the constitution of Connecticut, article first, §§ 8 and 9. The petitioner, Timothy Griffin, appeals from the judgment of the habeas court rendered in favor of the respondent, the Commissioner of Correction. The petitioner argues that Connecticut's "standards of decency" regarding acceptable punishments for children who engage in criminal conduct have evolved. That evolution, the petitioner contends, has rendered both the transfer of a fourteen year old defendant's case to the regular criminal docket and the resultant sentencing as an adult unconstitutional, in violation of the state prohibition against cruel and unusual punishment.[2] The respondent claims that, because recent statutory modifications to the juvenile justice system do not reflect changes in contemporary standards of decency, the habeas court properly granted the respondent's motion for summary judgment. The respondent specifically cites to No. 15-183 of the 2015 Public Acts (P.A. 15-183), which, inter alia, raised to fifteen years the age of a child whose case is subject to transfer to the regular criminal docket from the docket for juvenile matters, and to No. 15-84 of the 2015 Public Acts (P.A. 15-84), which makes certain individuals eligible for parole. We agree that recent statutory changes to the juvenile justice system—which significantly limit, but do not entirely prohibit, the transfer of a fourteen year old defendant's case to the regular criminal docket—do not evidence a change in contemporary standards of decency for purposes of the constitutional claim raised by the petitioner in the present case. We also conclude that, because the petitioner is eligible for parole pursuant to P.A. 15-84, his forty year sentence complies with established constitutional safeguards. Therefore, we affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. In December, 1997, the then fourteen year old petitioner was arrested in connection with the murder of a grocery store owner during an armed robbery. The petitioner and an accomplice donned masks and entered the grocery store, where the petitioner shot and killed the store owner. The perpetrators then emptied the cash register and fled. Afterward, the petitioner "bragg[ed] about shooting the owner of the store . . . ." At the time of the crime, the petitioner had been removed from the normal school curriculum, placed on juvenile probation, and required to wear an electronic bracelet to monitor his location because, allegedly, he had assaulted a teacher. The petitioner's

case was automatically transferred to the regular criminal docket pursuant to General Statutes (Rev. to 1997) § 46b-127 (a). In 1999, he entered open guilty pleas to felony murder in violation of General Statutes (Rev. to 1997) § 53a-54c and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2). He received a total effective sentence of forty years imprisonment. At that time, the petitioner was not granted the possibility of eligibility for parole.

In the petitioner's first habeas action in 2007, the habeas court found that the petitioner failed to prove that his pleas had not been entered knowingly, intelligently and voluntarily but rendered judgment in his favor on his claim of ineffective assistance of counsel and restored his right to file for sentence review. In a per curiam decision, this court affirmed the judgment of the habeas court. *Griffin* v. *Commissioner of Correction*, 292 Conn. 591, 597, 973 A.2d 1271 (2009). Subsequently, upon the petitioner's application for review, the Sentence Review Division of the Superior Court found that the sentence imposed was "neither inappropriate [nor] disproportionate." *State* v. *Griffin*, Docket No. CR-97-135279, 2010 WL 1794692, *2 (Conn. Super. February 23, 2010).

After filing and then withdrawing a second habeas petition, the petitioner filed the petition for a writ of habeas corpus that is the subject of this appeal.[3] The parties filed cross motions for summary judgment, and the habeas court granted the respondent's motion.[4] The habeas court then granted the petitioner's petition for certification to appeal in September, 2017. See General Statutes § 52-470 (g). This appeal followed.

This appeal presents issues of constitutional interpretation and statutory construction, which are matters of law subject to our plenary review. See, e.g., General Statutes § 1-2z; *Tannone* v. *Amica Mutual Ins. Co.*, 329 Conn. 665, 671, 189 A.3d 99 (2018); *Honulik* v. *Greenwich*, 293 Conn. 698, 710, 980 A.2d 880 (2009). Summary judgment shall be granted if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Practice Book § 17-49; see also *Rodriguez* v. *Testa*, 296 Conn. 1, 6–7, 993 A.2d 955 (2010). The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. See, e.g., *Rodriguez* v. *Testa*, supra, 6–7.

I

We first consider whether the passage of P.A. 15-183 establishes that contemporary standards of decency have evolved, such that it is unconstitutional to transfer the case of a fourteen year old defendant from the docket for juvenile matters to the regular criminal

docket under any set of circumstances. In advancing this claim, the petitioner effectively asks this court to apply P.A. 15-183 retroactively to all persons currently serving an adult length sentence for a crime committed at fourteen years of age. We decline to do so.

In 2015, the legislature passed P.A. 15-183, which, among other things, as a general rule, raised the age of a child whose case can be transferred from the docket for juvenile matters to the regular criminal docket from fourteen years to fifteen years. See General Statutes § 46b-127 (a). Shortly thereafter, this court concluded that P.A. 15-183 applied retroactively to pending cases. See *State* v. *Nathaniel S.*, 323 Conn. 290, 292–93, 146 A.3d 988 (2016). We explicitly stated, however, that P.A. 15-183 did not apply to cases that had reached final judgment, concluding that "we perceive no absurdity in the fact that retroactive application of the act will affect pending cases but not those that already have reached a final judgment, as this will be true of most retroactive amendments to procedural rules." Id., 300. That conclusion, of course, would apply in the context of a habeas petition, which collaterally attacks a final judgment.

At about the same time as the enactment of P.A. 15-183 and our conclusion in *Nathaniel S.*, we held, in a death penalty case, that a statute could apply retroactively—even to cases that had reached final judgment—if society's standards of decency had evolved so that a previously constitutionally valid criminal punishment now violated the state constitution's prohibition on cruel and unusual punishment. See *State* v. *Santiago*, 318 Conn. 1, 118–19, 139–40, 122 A.3d 1 (2015). In *Santiago*, the defendant was found guilty of capital felony for a murder committed in December, 2000, and was sentenced to death. Id., 10–11. During the appeals process, our legislature passed No. 12-5 of the 2012 Public Acts (P.A. 12-5), which prospectively banned the death penalty in all cases. See General Statutes §§ 53a-35a, 53a-45, 53a-46a, 53a-46b and 53a-54a; *State* v. *Santiago*, supra, 11–12. The defendant sought review of whether, "although his crimes were committed prior to the effective date of [P.A. 12-5], that legislation nevertheless represent[ed] a fundamental change in the contemporary standard[s] of decency in Connecticut . . . rendering the death penalty now cruel and unusual punishment . . . ." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 12. In light of the passage of P.A. 12-5, this court reexamined the constitutionality of the death penalty pursuant to the state constitution, focusing on the principle that, "in determining whether a particular punishment is cruel and unusual in violation of [state] constitutional standards, we must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 43, quoting *State* v. *Rizzo*, 303 Conn. 71,

187–88, 31 A.3d 1094 (2011).

We explained in *Santiago* that, to determine whether standards of decency are evolving, we rely on five objective criteria: (1) historical development of the punishment at issue; (2) legislative enactments; (3) the current practice of prosecutors and sentencing judges or juries; (4) the laws and practices of other jurisdictions; and (5) the opinions and recommendations of professional associations.[5] See *State* v. *Santiago*, supra, 318 Conn. 52; see also *State* v. *McCleese*, 333 Conn. 378, 407, A.3d        (2019). On the basis of these criteria, this court concluded that the prospective repeal of the death penalty, coupled with the fact that only one person had been executed in this state since 1960, demonstrated that contemporary standards of decency had evolved such that the imposition of the death penalty on inmates convicted under the repealed death penalty statutory scheme violated the state constitution's prohibition against excessive and disproportionate punishment. See *State* v. *Santiago*, supra, 139–40. Therefore, we concluded, P.A. 12-5 applied retroactively, and all sentences of death are now reduced to life imprisonment with no possibility of release, even in those cases that had long since gone to final judgment.[6] Id.

The petitioner asks us to extend the rationale of *Santiago* to the circumstances of the present case, specifically, that we conclude that P.A. 15-183 indicates that standards of decency have evolved and that P.A. 15-183 applies retroactively to all persons currently serving an adult length sentence for a crime committed at fourteen years of age. We disagree that the rationale of *Santiago* extends to the petitioner's claims and emphasize that the circumstances presented in *Santiago* were extraordinary. First, as both this court and the United States Supreme Court separately have recognized, "[d]eath is different." *State* v. *Rizzo*, 266 Conn. 171, 226, 833 A.2d 363 (2003); see also *California* v. *Ramos*, 463 U.S. 992, 998, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983) (recognizing "the qualitative difference of death from all other punishments"). Second, in *Santiago*, this court was confronted with legislation that simultaneously banned *all* executions prospectively, yet preserved the sentences of death for those whose offenses had been committed prior to a particular date. By contrast, P.A. 15-183, codified as amended at General Statutes § 46b-127, merely establishes, *as a general rule*, that transfers of cases involving fourteen year old defendants to the regular criminal docket are barred. Under other provisions of the current statutory scheme, however, there are circumstances, albeit rare, in which the case of a fourteen year old defendant may be transferred to the regular criminal docket. For the reasons set forth more fully herein, we conclude that transferring the case of a fourteen year old defendant to the regular criminal docket comports with our evolving standards of decency and, therefore, does not violate the constitu-

tion of Connecticut.

Our application of the five criteria set forth in *Santiago* to the petitioner's claim confirms our conclusion. Historically, public policies guiding the treatment of fourteen year old defendants have varied over time, particularly as they pertain to children who commit serious offenses like felony murder. Unlike the steady 400 year decline in the acceptability of imposing the death penalty, the treatment of criminal defendants who are children has fluctuated between policies favoring the transfer of the cases of such defendants to the regular criminal docket and those favoring retention in the juvenile justice system. See *State* v. *Santiago*, supra, 318 Conn. 53–54. See generally E. Cauffman et al., "How Developmental Science Influences Juvenile Justice Reform," 8 U.C. Irvine L. Rev. 21, 33–34 (2018) ("[R]ising juvenile crime in the latter half of the twentieth century . . . [gave] rise to the 'get tough' policy agendas across the country. . . . [A]s the fear of adolescent crime subsided in many states, the pendulum swung back in favor of judicial discretion. . . . Presently, juvenile transfer policies vary from state to state." [Footnotes omitted.]). Therefore, the current shift toward the retention of more fourteen year olds in the juvenile system as evidenced by P.A. 15-183, although relevant to the question of whether standards of decency have evolved, carries less weight than did P.A. 12-5.[7] As the habeas court in the present case observed, "[t]he legislature is free to meander as long as its path stays with[in] constitutional bounds."

"[T]he clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." (Internal quotation marks omitted.) *Atkins* v. *Virginia*, 536 U.S. 304, 312, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002); see also *State* v. *McCleese*, supra, 333 Conn. 407; *State* v. *Santiago*, supra, 318 Conn. 59–60. Our detailed review of P.A. 15-183 reveals that, although the changes effected by the act certainly reflect our law's ongoing movement toward a juvenile justice system that is adapted to the unique needs and vulnerabilities of children, it *allows* some transfers, albeit under very narrow circumstances, of the cases of fourteen year olds to the regular criminal docket. Accordingly, contrary to the petitioner's argument, P.A. 15-183 stops short of evidencing a societal rejection of *all* such transfers.

In enacting P.A. 15-183, which, in relevant part, amended General Statutes (Rev. to 2015) § 46b-127, the legislature changed the process by which a child's case may be transferred from the docket for juvenile matters to the regular criminal docket. Prior to the enactment of P.A. 15-183, the case of a child aged fourteen and older was automatically transferred to the regular criminal docket when the child was charged with a capital felony, a class A or B felony, or felony arson. See Gen-

eral Statutes (Rev. to 2015) § 46b-127 (a) (1). Following such transfer, at the state's attorney's request, the case of a child charged with a class B felony could be transferred back to the docket for juvenile matters, but there was no similar mechanism for those charged with a capital felony or class A felony. See General Statutes (Rev. to 2015) § 46b-127 (a) (2). A child at least fourteen years of age charged with class C, D, or E felonies could have his case transferred to the regular criminal docket following a hearing to consider probable cause and the best interests of the child and the public. See General Statutes (Rev. to 2015) § 46b-127 (b) (1). Children who were ages thirteen and under could not have their cases transferred to the regular criminal docket under any circumstances. See General Statutes (Rev. to 2015) § 46b-127.

The landscape for transfers changed with the passage of P.A. 15-183. The act now allowed the automatic transfer of cases to the regular criminal docket only for those cases in which the offense had been committed by a child who had attained fifteen years of age. See General Statutes § 46b-127 (a) (1). Children fifteen years old and older continue to have their cases automatically transferred to the regular criminal docket when they have been charged with a capital felony, a class A felony, or arson murder, but the legislature limited which class B felonies subject a child's case to automatic transfer. See General Statutes § 46b-127 (a) (1) and (3). For many class B felonies, children charged with those offenses are now afforded the same hearing process as those charged with class C, D, or E felonies: a child at least fifteen years of age charged with these offenses may have his case transferred to the regular criminal docket following a hearing to consider probable cause and the best interests of the child and the public. See General Statutes § 46b-127 (a) (3) and (b) (1). The effect is that, now, children aged fourteen years old and younger cannot have their cases transferred to the regular criminal docket *under § 46b-127*. See General Statutes § 46b-127.

Nevertheless, the legislature left in place another procedural mechanism by which a fourteen year old's case can be transferred to the regular criminal docket. Specifically, pursuant to General Statutes § 46b-133c, when a child who has been designated a serious juvenile repeat offender[8] is charged with a felony committed when he was at least fourteen years old and the child does not waive his right to a trial by jury, then the court must transfer the child's case to the regular criminal docket. General Statutes § 46b-133c (a), (b) and (f). The prosecutor initiates this procedure by requesting that the proceeding be designated a serious juvenile repeat offender prosecution and must show by clear and convincing evidence that such designation will serve the public safety. General Statutes § 46b-133c (b). After such designation, a serious juvenile repeat offender

prosecution shall be transferred to the regular criminal docket only if the child does not waive his right to a trial by jury. General Statutes § 46b-133c (f). If the child does waive his right to trial by jury, then the proceeding is held before the court. General Statutes § 46b-133c (c). Significantly, the legislature amended General Statutes (Rev. to 2015) § 46b-133c in 2015; see P.A. 15-84; the same year that it amended General Statutes (Rev. to 2015) § 46b-127. See P.A. 15-183. The fact that the legislature looked at both provisions in the same year and did *not* raise the minimum age for transfer under § 46b-133c provides a strong indication that the legislature intended to preserve this narrow exception to the general rule that the case of a fourteen year old cannot be transferred to the general criminal docket.

It is clear that the legislature's views on the appropriate punishment and procedural protections for children in the criminal context are changing and that it now prohibits the transfer of most cases of fourteen year olds charged with felonies to the regular criminal docket, but the legislature stopped short of enacting a complete ban under any circumstances. That is, although a fourteen year old's case will be transferred only under very narrow circumstances and only when the statutory procedural safeguards have been satisfied, P.A. 15-183 *does allow*, within those limited circumstances, a fourteen year old's case to be transferred to the regular criminal docket. Because it left the procedure in place for a fourteen year old's case to be transferred to the regular criminal docket if he is adjudicated a serious juvenile repeat offender, P.A. 15-183 does not signal a change in society's evolving standards of decency rendering unconstitutional the transfer of a fourteen year old's case to the regular criminal docket under any circumstances.

Public Act 15-183 plainly is distinguished in this respect from P.A. 12-5, which prospectively repealed the death penalty under *any* circumstances, even for the most heinous crimes and for the most violent repeat offenders. See *State* v. *Santiago*, supra, 318 Conn. 60–61 ("For the first time in our state's history, the governor and a majority of both legislative chambers have now rejected state sanctioned killing and agreed that life imprisonment without the possibility of release is a just and adequate punishment for even the most horrific crimes. For any future crimes, the death penalty has been removed from the list of acceptable punishment that may be imposed in accordance with the law."). Public Act 12-5 did not leave in place procedural mechanisms by which even a few defendants could be sentenced to death going forward. The *complete* prospective abolition of the death penalty signaled to this court that related standards of decency had quite clearly evolved, rendering the death penalty a violation of the prohibition on cruel and unusual punishment in the constitution of Connecticut in all cases, regardless of

when the crime was committed. See id., 62. In contrast, P.A. 15-183 did not eliminate the transfer of all cases of fourteen year olds to the regular criminal docket.

Finally, "[a]lthough trends within Connecticut are the most direct and relevant indicators of contemporary standards of decency with respect to the state constitution, we also look to developments in our sister states . . . for additional input." Id., 77–78; see also *State* v. *McCleese*, supra, 333 Conn. 399; *State* v. *Rizzo*, supra, 303 Conn. 190–91. When we do so, it becomes apparent that transferring a fourteen year old defendant's case to the regular criminal docket is routinely done, especially in the instance of serious offenses. In fact, the petitioner cites to only one state, New Jersey, which has set fifteen years old as the minimum age at which a child may have his case transferred to the regular criminal docket, prohibiting the cases of fourteen year olds from ever being transferred to the regular criminal docket, even for crimes of murder. See N.J. Stat. Ann. § 2A:4A-26.1 (c) (West Cum. Supp. 2018). One additional state, New Mexico, has a minimum transfer age of fifteen, but fourteen year old defendants charged with murder and tried on the docket for juvenile matters, can receive adult length sentences. See N.M. Stat. Ann. §§ 32A-2-3 (J) (3) and 32A-2-20 (2010). The parties do not dispute that the remaining forty-eight states— including Connecticut—allow for a fourteen year old's case to be tried on the regular criminal docket in at least some circumstances. Accordingly, Connecticut is in accord with the vast majority of states. By contrast, as we noted in *Santiago*, although the United States remains "an anomaly, the last remaining holdout in a historical period that has seen the Western nations embrace abolitionism as a human rights issue and a mark of civilization," nationally, "the number of states eschewing the death penalty continues to rise." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 318 Conn. 78.

## II

Having concluded that the transfer of the petitioner's criminal case to the regular criminal docket for a crime he committed when he was fourteen years old does not violate the Connecticut constitution, the remaining issue we address is whether the petitioner's forty year sentence violates the prohibition against cruel and unusual punishment even after the provisions of P.A. 15-84 made the petitioner eligible for parole after serving 60 percent, i.e., twenty-four years, of his original sentence, which was imposed when he was fifteen years old. We have recently rejected similar claims challenging the length of a sentence imposed after a child was tried and convicted on the regular criminal docket. See generally *State* v. *McCleese*, supra, 333 Conn. 382, 409 (granting of parole eligibility pursuant to P.A. 15-84 was adequate remedy for seventeen year old sentenced to eighty-

five years for murder and related offenses); *State* v. *Williams-Bey*, 333 Conn. 468, 471, 477,     A.3d (2019) (granting of parole eligibility pursuant to P.A. 15-84 was adequate remedy for sixteen year old sentenced to thirty-five years imprisonment for murder as accessory); *State* v. *Delgado*, 323 Conn. 801, 802, 815, 151 A.3d 345 (2016) (defendant's entitlement to parole consideration pursuant to P.A. 15-84 was adequate remedy for sixteen year old sentenced to sixty-five years imprisonment). Because the petitioner is now eligible for parole pursuant to the provisions of P.A. 15-84, the state constitution does not require a resentencing. See General Statutes § 54-125a (f) (1).

We acknowledge that a forty year sentence is a significant amount of time. Felony murder, however, is one of the most serious offenses that a person can commit in our society. When the petitioner was initially sentenced to forty years with no possibility of parole, the petitioner's scheduled release would have been in 2037, when he would have been in his mid-fifties. With the enactment of P.A. 15-84, the petitioner will now be eligible for parole in 2023, after serving twenty-four years, sixteen years earlier than originally anticipated and one year less than the mandatory minimum sentence for adults convicted of felony murder. See General Statutes §§ 53a-35a (2) and 53a-54c. At that time, the petitioner will be in his late thirties. Unlike defendants serving life sentences and functional life sentences with no possibility of parole, the petitioner has a "chance for fulfillment outside prison walls," a "chance for reconciliation with society," and hope for his future after serving his sentence. *Casiano* v. *Commissioner of Correction*, 317 Conn. 52, 79, 115 A.3d 1031 (2015), cert. denied sub nom. *Semple* v. *Casiano*,     U.S.     , 136 S. Ct. 1364, 194 L. Ed. 2d 376 (2016); cf. id. (life sentence can include sentence that is functional equivalent of life by leaving juvenile defendant "no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope" [internal quotation marks omitted]).

Finally, we observe that the petitioner requests that his judgment of conviction be reversed, that his sentence that was imposed twenty years ago be vacated, and that a new trial be ordered in compliance with § 46b-127. This requested relief is not practicable. The petitioner seeks to have access to the juvenile justice system and its associated rehabilitation programs, but the petitioner, who is now approximately thirty-five years old, is unable to participate in these programs because of his age. As we recently observed in *McCleese*, the inquiry of whether a child was incorrigible at the time of sentencing is difficult to assess after the passage of time. "[E]ven in cases in which only a few years have passed, [i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable

corruption." (Internal quotation marks omitted.) *State* v. *McCleese*, supra, 333 Conn. 403; see also *Graham* v. *Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010). "The parole board, under P.A. 15-84, § 1 (f), on the other hand, bases its decisions on more recent evidence and more ascertainable outcomes . . . [and] relies more on evidence of actual rehabilitation and focuses more on the offender's ability to succeed outside of prison at the most relevant moment—just before he will, potentially, be released." *State* v. *McCleese*, supra, 403. At this point, once the petitioner becomes eligible for parole, the parole board is the better venue for relief. At the appropriate time, the parole board will evaluate the petitioner for parole release by taking into account various statutory factors, including "the age and circumstances of [the petitioner] as of the date of the commission of the crime or crimes, whether [the petitioner] has demonstrated remorse and increased maturity since the date of the commission of the crime or crimes . . . lack of education or obstacles that [the petitioner] may have faced as a child or youth in the adult correctional system, the opportunities for rehabilitation in the adult correctional system and the overall degree of [the petitioner's] rehabilitation considering the nature and circumstances of the crime or crimes."[9] General Statutes § 54-125a (f) (4) (C).

For the reasons we have stated, the transfer of the petitioner's case to the regular criminal docket and his subsequent sentencing do not violate the prohibition against cruel and unusual punishment enshrined in the Connecticut constitution.

The judgment is affirmed.

In this opinion ROBINSON, C. J., and PALMER, McDONALD, D'AURIA and MULLINS, Js., concurred.

* August 23, 2019, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The petitioner appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The petitioner asserts three claims that we deem to be inadequately briefed and, therefore, do not consider: an as-applied challenge, a substantive due process challenge, and a procedural due process challenge.

[3] The petitioner filed in the trial court a motion to correct an illegal sentence pursuant to Practice Book § 43-22 on the basis of the same claim that he has raised in the habeas petition at issue in this appeal. We have explained that, "before seeking to correct an illegal sentence in the habeas court, a defendant either must raise the issue on direct appeal or file a motion pursuant to § 43-22 with the trial court." *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 38, 779 A.2d 80 (2001). A petitioner's failure to raise the issue on direct appeal or in a motion to correct an illegal sentence could risk procedural default. See id., 39–40. The respondent, however, during a hearing on the petitioner's motion to correct an illegal sentence on May 24, 2017, advised the trial court that the habeas court should be the proper forum for the petitioner's claim. Consistent with this position, the respondent concedes that he "did not pursue a procedural default claim in [his] motion for summary judgment or when arguing against the petitioner's motion for summary judgment." Because the respondent expressly waived the special defense of procedural default, the ordinary rule requiring the petitioner first to seek relief through a motion to correct an illegal sentence does not apply in the present habeas action.

[4] The petitioner acknowledges that his appeal from the habeas court's denial of his motion for summary judgment was not a final judgment for the purposes of appeal. The petitioner, therefore, concedes that the single issue in the present case is whether it was error for the habeas court to

grant the respondent's motion for summary judgment.

[5] We do not consider the current practice of prosecutors and sentencing judges as they are bound by the applicable statutes and do not have the discretion to deviate. Therefore, in the present case, they are not an indication of contemporary understandings of applicable sociological norms. In addition, the petitioner did not reference opinions and recommendations of professional associations that relate to the transfer of a fourteen year old child's case to the regular criminal docket; nor did our research discover any that addressed this specific issue.

[6] We utilize the framework that this court applied in *Santiago* as the analysis of the evolving standards of decency, as it is the linchpin in the arguments of both the petitioner and the respondent. See *State* v. *Santiago*, supra, 318 Conn. 18 n.14. We observe that the parties also employed the factors we set forth in *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992). If we assume that the *Geisler* framework is applicable to the ultimate issue of whether transferring the case of a fourteen year old defendant to the regular criminal docket and his subsequent sentencing to forty years imprisonment now constitute a violation of the Connecticut constitutional prohibition on cruel and unusual punishment, the *Geisler* factors are interwoven into the evolving standards of decency analysis. See *State* v. *Santiago*, supra, 18 n.14.

[7] We consider it significant that, in *Santiago*, we observed that this state had executed only one person since 1960, and only after that person had "waived his right to further appeals and habeas remedies." *State* v. *Santiago*, supra, 318 Conn. 57, 58. By contrast, there is no indication that the transfer of children's cases to the regular criminal docket has ceased.

[8] A serious juvenile repeat offender is "any child charged with the commission of any felony if such child has previously been adjudicated as delinquent or otherwise adjudicated at any age for two violations of any provision of title 21a, 29, 53, or 53a that is designated as a felony." General Statutes § 46b-120 (10). A child may be adjudicated as delinquent if he has, while under sixteen years of age, "(i) violated any federal or state law, except section 53a-172, 53a-173, 53a-222, 53a-222a, 53a-223 or 53a-223a, or violated a municipal or local ordinance, except an ordinance regulating behavior of a child in a family with service needs, (ii) wilfully failed to appear in response to a summons under section 46b-133 or at any other court hearing in a delinquency proceeding of which the child had notice, (iii) violated any order of the Superior Court in a delinquency proceeding, except as provided in section 46b-148, or (iv) violated conditions of probation supervision or probation supervision with residential placement in a delinquency proceeding as ordered by the court." General Statutes § 46b-120 (2) (A).

[9] As we observed in *McCleese*, the parole board "does not overlook the value of" the offender's age and hallmarks of adolescence in determining "whether he has demonstrated substantial rehabilitation," and "should, *for culpability purposes*, consider [his] age and circumstances as of the date of the commission of the crime." (Emphasis in original.) *State* v. *McCleese*, supra, 333 Conn. 403 and 404 n.12.